STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1248


REBECCA LALONDE DESOTO

VERSUS

TROY WILLIAM DESOTO


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 173,245
HONORABLE B. DEXTER RYLAND, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

REVERSED IN PART, AFFIRMED AS AMENDED
IN PART, AND AFFIRMED IN PART.

Field V. Gremillion, III
Attorney at Law
P. O. Box 731
Alexandria, LA 71309
(318) 445-6021
Counsel for Defendant/Appellant:
    Troy William DeSoto

Chris J. Roy, Jr.
Attorney at Law
P. O. Box 1592
Alexandria, LA 71309-1592
(318) 487-9537
Counsel for Plaintiff/Appellee:
    Rebecca Lalonde DeSoto

**DECUIR, Judge.**

This is an appeal by Troy William DeSoto, defendant-appellant, from the judgment of the district court granting the request of Rebecca Lalonde DeSoto, plaintiff-appellee, for modification of child custody and increase in child support. Rebecca answered the appeal seeking one-half the cost of prescriptions and medical bills not covered by insurance.

Rebecca Lalonde DeSoto and Troy William DeSoto are the parents of the minor, Robert Troy DeSoto, born February 2, 1993. The parties were divorced on February 7, 1994. Prior to the divorce, joint custody was awarded by judgment rendered on August 30, 1993, and signed on November 2, 1993. The judgment of divorce specifically provided that the judgment of November 2, 1993, "be recognized and maintained in this judgment." This court, in a previous appeal, determined that the original judgment was a "considered decree" and the burden of proof rule enunciated in *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986), applies to requests to modify custody. *DeSoto v. DeSoto*, 94-1048 (La.App. 3 Cir. 3/1/95), 651 So.2d 497.

Since that time the parties have substantially followed the agreed upon joint custody plan, which provided that during the school year Robert would reside with Rebecca three weeks out of the month and with Troy the remaining week and one additional weekend. Robert would reside with Troy for the summer months. The only significant exception to the plan was that Troy has allowed Robert to go on a one-week vacation with Rebecca during the summer and allowed Robert to return to Rebecca one week prior to the start of school. The parties agreed that Robert would pay child support of $150.00 per month during the school year and that no support would be due during the three months of summer.

On June 25, 2003, Rebecca filed a petition for an increase in child support requesting that Troy be ordered to pay one-half of all non-covered dental and medical expenses. Troy subsequently did not allow Robert to go on vacation with Rebecca because she declined to sign an agreement guaranteeing that Troy would receive time with Robert to make up for the week lost. Rebecca then amended her petition seeking a modification of custody to provide for the vacation week and early return of Robert prior to the commencement of school.

The trial court modified Troy's child support obligation to $275.00 per month with the exceptions of June and July when no support would be owed. The court, finding that the existing custody arrangement was detrimental to the child, implemented a plan which called for Troy to have alternating weekends during the school year and gave Rebecca one week in the summer for vacation and ordered the child be returned to Rebecca one week prior to the opening of school. The trial court did not address the issue of medical expenses. This appeal ensued.

## MODIFICATION OF CUSTODY

Troy contends the trial court erred in failing to apply the *Bergeron* burden of proof for modification of custody, in determining that a change was warranted, and in making modifications beyond those requested by the parties.

Rebecca counters that the *Bergeron* rule does not apply because, despite the caption of her petition, what she seeks is actually a change in visitation. At the outset, we note that the original judgment provides for a joint custody plan. Louisiana Revised Statute 9:335(B)(2), which governs joint custody decrees and their implementation provides in pertinent part:

> The domiciliary parent is the parent with whom the child shall primarily reside, but *the other parent shall have physical custody* during

2

time periods that assure that the child has frequent and continuing contact with both parents.

(Emphasis added).

Visitation rights are governed by La.Civ.Code art. 136(A), which provides:

> *A parent not granted custody or joint custody* of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.

(Emphasis added).

Applying La.R.S. 9:335 to the facts of this case, we find that as the non-domiciliary parent under a joint custody decree, Troy has physical custody when the child is with him. Likewise, because Troy has been granted joint custody, Article 136(A) is not applicable. *See Francois v. Leon,* 02-0460 (La.App. 3 Cir. 11/27/02), 834 So.2d 1109; *but see White v. Fetzer,* 97-1266 (La.App. 3 Cir. 3/6/98), 707 So.2d 1377, *writ denied*, 98-0931 (La. 5/15/98), 719 So.2d 466. Accordingly, the burden of proof required is that enunciated in *Bergeron.*

We are mindful that the trial court has vast discretion in making child custody determinations and those determinations should not be overturned absent a clear showing of abuse of discretion. *Francois*, 834 So.2d 1109. However, in this case we find the trial court abused its discretion in modifying the custody plan in this case. It is unclear whether the trial court applied the *Bergeron* standard or the best interest of the child standard. While the court indicates that the prior custody arrangement is detrimental to the child, the record is devoid of evidence to support this contention. Moreover, while the trial court was within its authority in making changes to the custody arrangement not requested by the parties, we find that the changes made by the court in this case were an abuse of discretion. The custody plan in effect is the only plan Robert has ever known, there is no evidence in the record to warrant the trial court's disrupting a stable pattern of custody by taking approximately 54 days

3

of physical custody from Troy. Under either the *Bergeron* standard or the best interest of the child standard, this change is unwarranted.

Turning to Rebecca's request to have a week in the summer for vacation and a week for school preparation, we commend Troy for voluntarily acquiescing in these changes in the past. We note further that his request for assurance that he would receive additional time to compensate him for the time he was losing was not unreasonable under the particular circumstances and should be granted by Rebecca. Both these parents obviously care for Robert and have managed to put aside personal issues to assure that both maintain a relationship. Hopefully, they can continue to do so. In any event, the issue before us is whether Rebecca carried her burden of proof under *Bergeron* and has shown that continuation of the present plan is so deleterious to Robert that a change is warranted or proven by clear and convincing evidence that the harm is substantially outweighed by the advantages to the child. We find that she has failed to carry her burden of proof. Accordingly, the original custody decree and implementation plan is reinstated.

## CHILD SUPPORT

Troy contends that the trial court erred in applying child support worksheet A rather than worksheet B which is for shared custody arrangements. He contends that the existing plan is a *de facto* shared custody arrangement in that he has Robert 165 days (45%) and Rebecca has him 200 days (55%).

Louisiana Revised Statute 9:315.9 provides that shared custody means that each parent has physical custody for an approximately equal amount of time. Comment (a) to the statute notes that this provision, "should be interpreted as one half or an approximately equal amount of time, expressed in percentages such as forty-nine percent/fifty-one percent." In *Lea v. Sanders,* 04-762 (La.App. 3 Cir. 12/22/04),

4

___ So.2d. ___, the court found that La.R.S. 9:315.9 did not apply to a 43% to 57% custody arrangement. In dicta, the *Lea* court read comment (a) of the statute to provide a bright-line threshold of 49% to 51% for application of the statute. The question in *Lea* was not the applicable threshold under the statute, but whether the particular percentages in that case triggered the application of the statute. The question before us is whether the 45.5% to 54.5% split in this case constitutes a shared custody arrangement triggering application of the statute. We find that it does.

La.R.S. 9:315.9 is essentially a deviation from the amount of child support provided by the guidelines in certain circumstances. *See Jane C. Venohr & Robert G. Williams, The Implementation and Periodic Review of State Child Support Guidelines*, 33 Fam. L.Q. 7, 19 (Spring 1999).

The supreme court in *Guillot v. Munn,* 99-2132 (La. 3/24/00), 756 So.2d 290 discussed the policy underpinnings of Louisiana's custody and support laws in determining whether deviation from the guidelines was appropriate. The court said:

> The guidelines, which are presumed to be in the best interest of the child, must be interpreted in light of this legislative policy in order to achieve a consistent body of law. Because the statutory scheme enacted by the Legislature repeatedly provides that parents and their children should have regular contact, it is reasonable to conclude that the guideline formula must contemplate some visitation between the child and the nondomiciliary parent or the parent without legal custody. It is also reasonable to conclude that the visitation contemplated by the guidelines is a "typical" amount of visitation. . . .
>
> . . . .
>
> In some instances, however, a reduction in the amount of support owed to the domiciliary parent may be warranted when the nondomiciliary parent has the child for a non-typical, *i.e.*, an extraordinary, amount of time per year. When the time a child spends with the nondomiciliary parent reaches this heightened level, the parents are generally said to be in a "shared custody" or "extraordinary visitation" arrangement. Laura W. Morgan, *Child Support Guidelines and the Shared Custody Dilemma*, 10 Divorce Litig. 213 (November 1998) (hereinafter Morgan III). In shared custody or extraordinary visitation situations, the nondomiciliary parent's increased time with the

5

child increases his or her direct child-related expenses. Karen A. Getman, *Changing Formulas for Changing Families: Shared Custody Must Not Shortchange Children,* 10 Fam. Advocate 47 (Winter 1988). Nevertheless, this does not mean that the domiciliary parent's expenses decrease for every dollar the nondomiciliary parent pays in expenses. Morgan I, *supra*, § 3.03[a], at 3-27. Instead, there is an increase in the total expenditures made on the child's behalf. *Id*.; Getman, *supra*, at 48. This is due to the fact that each parent pays "redundant costs," those fixed expenses that both parents must pay, such as housing expenses, utilities, a bedroom for the child, and toys. Morgan I, *supra*, § 3.03[a], at 3-28. These fixed expenses are not affected by where the child sleeps. Getman, *supra*. It is estimated that it costs 50% more to provide two households for a child than to provide one because of these redundant costs. Czapanskiy, *supra*, at 46.

. . . .

We note the Legislature has given the trial court wide discretion in cases dealing with shared custody to allow it to deal with the myriad of circumstances that may occur in these cases. For example, it is possible that extraordinary visitation only take place during certain discrete periods of time. In these cases, for example during summer visitation or extended holiday visitation, the trial court is given latitude and may order a reduction in child support payments only during these periods. This is made clear by La.R.S. 9:315.8(E) which states that the trial court may adjust the amount of child support to be paid "during that period of time" the child spends with the nondomiciliary party. It is only when the extraordinary visitation or shared custody occurs regularly throughout the year that trial courts should reduce the child support obligation in every month.

Jurisdictions in which adjustments in support for shared custody or extraordinary visitation situations are seen as deviation factors have developed a two-part test to assist judges in considering whether to deviate from the guidelines. First, the court must determine whether the visitation is in fact extraordinary. Visitation that is barely more than "typical" will usually not be considered extraordinary visitation warranting deviation. Second, the court must consider whether the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the custodial parent. See Morgan I, supra, § 3.03[d], at 3-37 through 3-38 and cases cited therein. Because we find this test accurately reflects the considerations involved in determining whether to deviate from the guidelines in shared custody or extraordinary visitation situations and because it furthers public policy and the legislature's intent in enacting La.R.S. 9:315.8(E), we hereby adopt this test for use in considering whether a shared custody or extraordinary visitation situation warrants deviation.

We must, however, add a third prong to this test. That is, the court must determine that the application of the guidelines in the particular case under consideration would not be in the best interest of the child or would be inequitable to the parties. This prong is necessary to satisfy the deviation requirement of La.R.S. 9:315.1(B).

Essentially, the test as formulated above is to be used to assist judges in performing the balancing of economic burdens contemplated by La.R.S. 9:315.8(E). In applying this test, there is no bright line rule as to what constitutes extraordinary visitation as opposed to "typical" visitation.

*Id.* at 298-301 (footnote omitted).

We find these policy considerations to be equally applicable to La.R.S. 9:315.9. Accordingly, while we find that a 45.5% to 54.5% custody split meets the definition of "shared custody" under La.R.S. 9:315.9, we find no abuse of discretion in the trial court's refusal to deviate from the guidelines by applying La.R.S. 9:315.9. While the time factor suggests an extraordinary custody arrangement, we find that the distribution of custody is essentially a typical school-year summer arrangement. Accordingly, we find no error in the trial court's calculation of Troy's child support obligation. However, we amend the award to reflect that Troy owes no support for the months of June, July, and August.

**FAILURE TO ORDER PAYMENT OF MEDICAL EXPENSES**

Rebecca contends the trial court erred in failing to rule on her request that Troy be ordered to pay one-half of all prescription and medical bills not covered by insurance. We disagree.

It is well settled that a judgment's silence as to an issue is a rejection of the claim. *Alexander v. Roy O. Martin Lumber Co.*, 00-1344 (La.App. 3 Cir. 5/9/01), 784 So.2d 872, *writ denied*, 01-1684 (La. 9/21/01), 797 So.2d 676. In *McDaniel v. McDaniel,* 95-1314, pp. 9-10 (La.App. 3 Cir. 3/6/96), 670 So.2d 767, 773, we addressed the inclusion of ordinary medical expenses and concluded that, "[b]y

7

making provisions for the cost of health insurance and extraordinary medical expenses only, the child support guidelines appear to contemplate that the insurance coverage and the basic child support obligation will be sufficient to provide for the ordinary medical needs of the children." Accordingly, we find no error in the trial court's refusal to order Troy to pay one-half of all non-covered medical expenses.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed insofar as it changes custody, is affirmed as amended insofar as it orders an increase in child support, and affirmed insofar as it refuses to order payment of non-covered medical expenses. All costs of these proceedings are taxed equally to the parties.

**REVERSED IN PART, AFFIRMED AS AMENDED IN PART, AND AFFIRMED IN PART.**