943 So.2d 396 (2006)
Debra Leigh Dalgo JANNEY
v.
Todd Truitt JANNEY.
No. 2005 CA 0507.
Court of Appeal of Louisiana, First Circuit.
July 26, 2006.
Concurring Opinion August 2, 2006.
*397 Marcus T. Foote, Baton Rouge, for Plaintiff/Appellant Debra Leigh Dalgo Janney.
Vincent A. Saffiotti, Downs & Saffiotti, L.L.P., Baton Rouge, for Defendant/Appellee Todd Truitt Janney.
Before: PARRO, McDONALD, and HUGHES, JJ.
Concurring Opinion of Justice McDonald August 2, 2006.
PARRO, J.
This is an appeal from a judgment setting child support pursuant to LSA-R.S. 9:315.9, the shared custody child support provision. For the reasons that follow, we affirm the judgment.

FACTS AND PROCEDURAL HISTORY
Debra Leigh Dalgo Janney and Todd Truitt Janney were divorced in 1995. One child was born of their marriage, in 1993. After their divorce, the Janneys entered into a stipulation that was accepted by the court and rendered in a judgment, awarding the parties joint custody of the child with Ms. Janney designated as domiciliary parent. Mr. Janney was awarded visitation every other week, from Thursday through Monday. The court also set child support to be paid by Mr. Janney in the amount of $1,200 per month, reflecting his 69 percent pro rata share of the combined adjusted gross income.
Almost a year later the parties entered into a stipulation reducing Mr. Janney's child support obligation to $700 per month *398 and providing for a 50 percent sharing of school and medical expenses attributable to the child. The agreement further established a detailed holiday visitation schedule. A judgment reflecting this stipulation was signed on October 19, 1998.
The present matter was initiated on June 7, 2004, when Mr. Janney filed a rule to show cause seeking equal physical custody of the minor child, a decrease in child support, and entitlement to the income tax dependency deduction. On August 5, 2004, the date the matter was set for trial, the parties entered into a partial stipulation on custody in which they agreed that during the school year, Mr. Janney would have custodial periods with the child every other week from Wednesday, when he would pick up the child after school, through the following Monday morning, when the child would be returned to school. In the alternating, or "off" week, Mr. Janney would have visitation with the child on Wednesday after school through the following morning. The stipulation further provided that summer visitation would take place with the parties alternating actual physical custody on a weekly basis, with the rotation set up such that Ms. Janney would exercise the last week of summer vacation before school started. The holiday visitation would take place on an alternating basis, as set forth in the previous judgment. No agreement was made as to the calculation of child support, and a trial was held on that issue.
The court took the matter under advisement to consider the testimony and evidence presented by the parties, and on August 23, 2004, rendered its decision and issued written reasons, detailing the method by which it calculated Mr. Janney's gross income. The court also detailed the method by which it calculated, pursuant to the custody stipulation that was incorporated in the judgment, the actual amount of days during the year that Mr. Janney exercises physical custody. Finding that Mr. Janney had custody 45.3 percent of the time, the court declared that the arrangement constituted shared custody. The court calculated the child support obligation using the shared custody formula and worksheet pursuant to LSA-R.S. 9:315.9. Mr. Janney's support obligation was accordingly set at $62.88 per month. Judgment was signed on September 23, 2004.
Ms. Janney appeals, asserting two assignments of error: 1) the trial court erred in declaring Mr. Janney's physical custody schedule constituted shared custody under LSA-R.S. 9:315.9 and in applying Worksheet B under LSA-R.S. 9:315.20 in calculating his child support obligation; and 2) the trial court erred in excluding the retained corporate earnings and shareholder loans of Mr. Janney's three businesses in calculating his income.

LAW AND ANALYSIS
Shared Custody
Ms. Janney asserts on appeal that the trial court erred in finding that the custody arrangement agreed to by the parties constituted "shared custody" as contemplated by LSA-R.S. 9:315.9, and thereby erred in using Worksheet B to calculate child support. Ms. Janney argues that the court should not have relied solely on the terms of the custody arrangement in determining the amount of days of actual physical custody, but should have referred to a calendar. She concludes from her calculations that Mr. Janney has physical custody only 158 days per year, rather than the 165.5 days determined by the court. She further submits that even if the court's calculations are correct, and Mr. Janney has physical custody 165.5 days, or 45.3 percent of the year, the arrangement *399 still fails to constitute shared custody.
Louisiana Revised Statute 9:315.9 contains the formula for calculating child support when the parents have shared custody. "Shared custody" is defined as "a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time." LSA-R.S. 9:315.9(A)(1). The formula differs from the typical child support formula, in that it has a built-in adjustment for the duplication of costs that inevitably occurs in a shared custody arrangement,[1] and is applied to reflect the actual percentage of time the child spends with each parent. See LSA-R.S. 9:315.9(A)(2) & (3).[2] When the joint custody order is deemed to provide for shared custody, the non-domiciliary parent does not have the additional burden of proving, as he does under Section 9:315.8, an increase in direct child-related expenses and a concomitant decrease in the domiciliary parent's direct child care expenses.[3]
In determining whether a particular arrangement is shared, the statute does not bind the trial court to a threshold percentage determined solely on the number of days.[4] Rather, the statute mandates an "approximately equal amount of time." It is obvious from a reading of LSA-R.S. 9:315.8(E)(2) that when the legislature intends to fix a threshold parameter, it does so. We conclude, therefore, that the trial court has discretion in determining whether a particular arrangement constitutes "shared custody," justifying the application of LSA-R.S. 9:315.9. Thus, the court may find such an arrangement when the physical custody is split as equally as possible, but through inevitable fluctuations, such as may occur when holidays are *400 divided or alternated, the actual number of days of physical custody in a given year is not exactly equal.
The parties in this case stipulated that they would "continue [to] share the joint care, custody and control of the minor child" in accord with a previous judgment, with certain modifications to the schedule, leaving only the child support determination to be made by the court. In reasons for judgment, the trial court described the shared custody arrangement as follows:
The October 19, 1998 judgment provided that out of a total of 48 holiday days, Mr. Janney had Truitt for an average of 24 of those days. The stipulated judgment read into the record on August 5, 2004 also provided that the parties were to split the summer break, or approximately eleven weeks, into alternating weeks of custody. This would result in approximately 38.5 days in which Mr. Janney would have custody of Truitt. By subtracting the total number of holiday days and the total number of summer break days from a total of 365 days in a year, there remains 240 days in a year in which the normal custody schedule prevails. The August 5, 2004 stipulation granted Mr. Janney custody of Truitt every other week from Wednesday after school until the following Monday morning plus the next Wednesday after school until the start of school Thursday, or 6 out of every 14 days. Therefore, of the 240 remaining days of the year, Mr. Janney has custody of Truitt for 103 days. Adding to the 103 days of normal custody the 24 holiday days Mr. Janney is awarded and the 38.5 days of summer when Mr. Janney exercises custody, results in a total of 165.5 days a year Mr. Janney has custody of Truitt. This equates to 45.3 percent of the year. The Court finds, therefore, Mr. Janney does have physical custody of Truitt "for an approximately equal amount of time" as does Ms. Janney. [Footnote omitted].
In Westcott v. Westcott, 04-2298 (La. App. 1st Cir.11/4/05), 927 So.2d 377, this court approved the application of the statute to a 37 percent to 63 percent split, because the "joint custody order provide[d] for shared custody," and the trial court's detailed analysis of the facts, including how many meals each parent provided, how much time each spent helping with homework, and the parents' overall participation in the children's lives, justified its deviation from the "approximately equal" formulation in the statute. Id. at 378-79. In the Janney arrangement, the couple effectively splits the summer and holiday visitation 50/50, with any fluctuation being due to the start-up or ending of the school year. During the school year, Mr. Janney has physical custody for six days of every two weeks, which seems to be a reasonable accommodation to the child's need for a regular routine during the school year. We find no error or abuse of discretion in the trial court's conclusion that the joint custody order in this case provides each parent with physical custody of the child for an "approximately equal" amount of time. Therefore, the court did not err in computing child support in accord with the formula in LSA-R.S. 9:315.9 and Worksheet B.
Mr. Janney's Income
Ms. Janney asserts that the trial court erred in excluding the retained corporate earnings and shareholder loans of Mr. Janney's three businesses[5] in calculating his income. While she admits that *401 there is no jurisprudential rule or statutory provision mandating the trial court to impute retained earnings or shareholder loans as income for computing child support, she argues that under the facts of this case, where Mr. Janney is the sole shareholder with unilateral control of the business accounts, the court erred in not imputing these amounts as income to Mr. Janney. In essence, she argues that the amounts reflected on the tax returns as shareholder loans from the businesses and retained earnings in the businesses are actually disguised income used by Mr. Janney for his personal benefit.
When this matter was filed and heard, Louisiana Revised Statute 9:315(C)(4) defined gross income,[6] stating, in pertinent part:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
In assessing Mr. Janney's income, the court examined his 2002 and 2003 personal tax returns and the available 2002 and 2003 business tax returns for his three businesses.[7] The court averaged the annual gross income of the three businesses over the two-year period, after deducting the ordinary and necessary expenses and adding back the deduction taken for depreciation. It then added this figure, $24,422.17, to Mr. Janney's average annual personal gross income,[8] $25,562.50, yielding a gross yearly income for Mr. Janney of $49,984.67 per year, or $4,165.39 monthly. The court also examined the amounts listed on the business tax returns as shareholder loans and retained earnings and declined to add any amount represented by these figures, finding Mr. Janney's testimony credible that the loans were to be *402 paid back to the corporations and the retained earnings were to be used to service business debts.
Ms. Janney submits that Mr. Janney, through his control of the business accounts, has maintained a consistent pattern of taking loans for personal use and in lieu of wages, thereby artificially maintaining a low income. The business tax returns reveal that while the outstanding total loan balance of $107,079 may be considered substantial, the major portion of that balance is attributable to loans taken by Mr. Janney prior to 2002. The court did not consider 2001 finances in its calculations. The 2002 business tax returns indicate that at the start of that year, the combined shareholder loan balance was $109,959. Mr. Janney explained that a large portion of this balance, almost $74,000, was money drawn in 2001 from the business account of the Denham Springs business for the down payment on the purchase of the building that now houses the Walker business. In 2002 and 2003, a total of $22,601 was loaned to him from the three corporations. However, the ending combined loan balance for 2003 was $107,079, or $25,481 less than what it was for the time frame examined by the court. Thus, during the two-year period examined by the court, the overall loan balance decreased.
In her argument that the court should have imputed the retained earnings as income, Ms. Janney points to a lack of documentation that would indicate that the businesses actually applied those funds to capital expenses and Mr. Janney's inability to specifically account for or explain why the funds were retained by the businesses. She argues that these funds are "waiting in the wings to eventually be declared income . . . after the court sets his child support obligation."
Mr. Janney testified that he does not prepare the tax returns, nor does he manage the financial books throughout the year. When asked to give examples of "what the retained earnings are" and "where it goes," Mr. Janney responded, "It's accounting jargon. I don't know what that is." He could not be sure exactly how the retained earnings had been used in the past, but did recall that in 2002, when "extra" funds were available, he chose not to distribute such funds to himself, but instead put the money back into the business for the purchase of equipment or something else needed for the business at that time. He testified that he plans on using future profits to pay business debts. He was aware that he had ultimate control of the business accounts and could distribute any "extra" funds to himself, but explained that the cash "is never there to take out." He indicated that he receives no personal benefit from the retained earnings; his income is his salary.
No testimony or other evidence was presented that would indicate the retained earnings of the corporations were used for anything other than legitimate business reasons. We note further that the retained earnings were included on the business tax returns and, as such, were figured into the income calculations.
We find that the trial court did not err or abuse its discretion in its treatment of shareholder loans and retained earnings. The record reveals that the court computed income in accordance with LSA-R.S. 9:315 and took into account the pass-through of the earnings retained by the subchapter-S corporations. The court was not mandated, under the facts of this case, to impute as income the amounts represented as shareholder loans or retained earnings of the subchapter-C corporation.

*403 CONCLUSION
For the reasons above, we affirm the judgment of the trial court. All costs of this appeal are assessed to Ms. Janney.
AFFIRMED.
McDONALD, J., concurs and will assign reasons.
HUGHES, J., dissents with reasons.
McDONALD, J., Concurring.
I agree with the result reached in this case because I do not think it was an abuse of the trial court's discretion to find that the custody agreement stipulated by the parties constituted shared custody within the meaning of and subject to La. R.S. 9:315.9.
I concur in the opinion because I have serious reservations about some of the principles articulated in Westcott, and relied upon by the majority in reaching their decision in this case. Specifically, I do not think the amount of participation by a parent in their child's activities, homework, etc. is a relevant factor in a determination of whether a finding of shared custody, with its concomitant legal consequences, is appropriate. I am also not convinced that a stipulation by the parents that the child sharing arrangement to which they have agreed is "shared custody" within the meaning of the law, thereby binding the courts, irrespective of the amount of time each parent has physical custody of the child/children.
Shared custody by definition requires physical custody of the child for an approximately equal amount of time. What constitutes an approximately equal amount of time may be determined by the courts when called upon to do so. However, I do not think interpretation of the law allows the courts to decree a physical custody sharing arrangement approximately equal when it clearly is not. The legislative intent in establishing an order of "shared custody" utilizing different child support guidelines was to take into consideration the duplication of expenses that may occur under circumstances where the child/children are with each parent an approximately equal amount of time. These are financial considerations and the relevant inquiries by the courts should be focused on the expenses involved. Helping a child with its homework is a parental duty, not entitled to compensation/renumeration by the courts. For these reasons, I concur.
HUGHES, J., dissents.
I respectfully dissent. It is submitted that "approximately equal" means as close to exactly equal as possible, recognizing that with an odd number of days in the year, and with holidays and special occasions, an exactly equal split is an impossibility. Some flexibility must be had, but I do not believe that a 55/45 split, a 10% difference, can be considered "approximately equal."
NOTES
[1] Some of these "redundant costs" are discussed in DeSoto v. DeSoto, 04-1248 (La.App. 3rd Cir.2/2/05), 893 So.2d 175, 179, and include housing expenses, utilities, a bedroom for the child, and toys.
[2] This adjustment recognizes that the phrase "approximately equal" means that the child may not be spending an exactly equal amount of time with each parent.
[3] A joint custody arrangement that does not constitute shared custody, even though the non-domiciliary parent is nevertheless granted more than the typical amount of visitation, may entitle the non-domiciliary parent to a reduction, in the form of a credit, in the amount of child support owed to the domiciliary parent. LSA-R.S. 9:315.8(E) provides, in part:

(2) If under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation.
* * *
(3) In determining the amount of credit to be given, the court shall consider the following:
(a) The amount of time the child spends with the person to whom the credit would be applied. The court shall include in such consideration the continuing expenses of the domiciliary party.
(b) The increase in financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
[4] The jurisprudence has been inconsistent on this point. In the DeSoto case, 893 So.2d at 178, the court found that a 45.5 percent to 54.5 percent split of physical custody constituted a shared custody arrangement triggering application of the statute, and yet approved the trial court's deviation from the statutory guidelines. In so concluding, the court discussed an earlier decision, Lea v. Sanders, 04-762 (La.App. 3rd Cir.12/22/04), 890 So.2d 764, writ denied, 05-0183 (La.3/24/05) 896 So.2d 1046, in which the court had not applied the statute to a 43 percent to 57 percent split and had stated in dicta that comment (a) to the statute provided a bright-line threshold of 49 percent to 51 percent for application of the statute. The DeSoto case specifically rejected any bright-line rule.
[5] Mr. Janney is a physical therapist and the sole shareholder of three corporations, two of which are subchapter-S corporations, and the other being a subchapter-C corporation.
[6] These provisions, with one minor revision not relevant to this case, are now found in LSA-R.S. 9:315(C)(3).
[7] The only tax return "missing" was the 2003 return for the corporation located in Denham Springs. Mr. Janney testified that one had not been prepared. However, he introduced  and the court considered  a 2003 Profit and Loss Statement for that corporation.
[8] Mr. Janney's personal gross income should reflect the earnings retained by the two subchapter-S corporations for each year in question, because such earnings flow through to the shareholder's personal tax return and are subject to taxation, whether distributed to the shareholder or retained by the corporation.