McCLENDON, J.
 

 |2The original defendant in this case, Darlene Pierce Aguillard, appeals and assigns error to the trial court’s (1) finding that the original plaintiff, David C. Aguil-lard, was not voluntarily underemployed, (2) invalid use of a “shared custody” schedule B to calculate child support obligations, (3) failure to hold Mr. Aguillard in contempt, and (4) failure to render an execu-tory judgment for arrearages, with attorney’s fees and costs. We affirm.
 
 [1]
 

 PROCEDURAL BACKGROUND
 

 The Aguillards were married in 1989 and three children were born of the marriage. A judgment of divorce was rendered in September of 2004. A stipulated judgment covering, among others, the issue of child custody and physical sharing of the children, was rendered on November 16, 2004, and signed on January 31, 2005. The stipulated judgment awarded joint custody, but did not provide for a domiciliary parent. The judgment did provide for equal sharing of the children during various holidays from year to year. In the summer, Mr. Aguillard had two weeks more with the children than Mrs. Aguillard. For the rest of the year, Mr. Aguillard had custody every other week from Thursday after school until the following Monday morning when the children
 
 *185
 
 returned to school, which equates to almost four full days during that week; and on the alternate weeks, when he had no weekend custody, he was to have the children from “Thursday afternoon” until “Friday morning,” or about one day, for a total of approximately 5 days for every 14 days.
 

 The next pertinent pleading for this appeal, a motion to decrease child support and change the custody plan, was filed by Mr. Aguillard on September 7, 2005. In his motion, Mr. Aguillard asserted that he was previously ordered to pay $1400.00 a month in child support, plus other expenses of the children. However, his salary had since decreased. In addition, he wanted custody exchanged on a weekly basis.
 

 |;;On November 2, 2005, Mrs. Aguillard filed a rule to show cause seeking arrear-ages, a finding of contempt, and an award of attorney fees and court costs. She asserted that Mr. Aguillard owed her $700.00 in past due child support and overdue medical and dental reimbursements. On June 14, 2006, she filed an “EMERGENCY RULE FOR CONTEMPT.” She asked that Mr. Aguillard be held in contempt and that an executory judgment be issued for $10,448.36 in past due child support and reimbursements, as well as costs and fees.
 

 Although the motion and rules were set for various hearing dates, the matters were continued and, ultimately, were not heard until September 8, 2006. The trial court issued written reasons for its decision and signed a judgment on October 3, 2007, which contained the following rulings:
 

 1.Mr. Aguillard’s child support was decreased to $750.96 a month, for the months of October 2005 through March 2006, and his percentage of the children’s medical, dental, and other expenses was also reduced;
 

 2. Beginning in April of 2006, Mr. Aguillard’s child support was further reduced to $448.00 a month, and his percentage of the children’s expenses and costs was further reduced;
 

 3. The contempt rule was dismissed with prejudice; and,
 

 4. Because of the change in the child support obligation, the calculation of the past due amounts was pretermit-ted.
 

 By a consent judgment signed on October 26, 2006, the time the children physically spent with their parents was changed. The summer was divided equally between the parents, and Mr. Aguillard was given the children from Tuesday afternoon until Monday morning. Although the consent judgment was not signed until October 26th, Mr. Aguillard testified at the hearing on September 8th that the parties were already operating under a plan of custody that extended his time with the children to every other Tuesday until Monday, when the children returned to school, in place of the prior physical sharing plan provided for in the judgment rendered in 2004.
 

 | .[Mrs. Aguillard appealed. She argues that the trial court erred in finding that Mr. Aguillard was not voluntarily underemployed, that the trial court incorrectly used the Schedule B worksheet required by LSA-R.S. 9:315.9 and 315.20 for parents -with shared custody, when the custody was not equal; in dismissing the motion for contempt with prejudice; and in not rendering an executory judgment for ar-rearages, attorney fees, and costs.
 

 VOLUNTARY UNDEREMPLOYMENT
 

 Only Mr. Aguillard testified at trial. He stated that, in early 2004, he be
 
 *186
 
 lieved that his employment was unstable and that a decrease in his yearly salary, of approximately $150,000.00, had been or would be instituted. For these reasons, Mr. Aguillard accepted a second position with a different employer in March of 2005. Although the second job paid a slightly lower salary of $125,000.00 per year, he intended to remain with his first employer on a contract basis. The first employer, however, did not see the plan in the same light as Mr. Aguillard, and he was asked to resign from the first position as of May 15, 2005, with severance pay over the next two months. Unfortunately, Mr. Aguillard was not able to complete some of the required accounting and financial duties assigned to him by the second employer. At trial, Mr. Aguillard testified that the second position had a “lot more” accounting work than he had initially realized. Subsequently, the employee, who held the position before Mr. Aguillard, advised that he was able to return to work and Mr. Aguillard was asked by the second employer to resign. The second position ended on September 31, 2005, with a severance package at half salary for six months. Mr. Aguillard testified that he then spent considerable time looking for another position, and accepted odd jobs and short term employment in the interim. In July of 2006, Mr. Aguillard found another job, but at the significantly lower salary of $45,000.00 per year.
 

 Appellant argues that Mr. Aguillard was arrogant and greedy in his attempts to maintain both jobs and in his declarations to his second employer that he was capable of completing the accounting required for the job. Further, | sappellant also states in her brief that Mr. Aguillard gambled on having two jobs and lost when he had to leave his position with the first employer. Simultaneously, appellant argues that Mr. Aguillard was voluntarily underemployed through his own fault or neglect.
 

 In written reasons for judgment, the trial court specifically found that:
 

 Mr. Aguillard’s substantial decrease in income since the last setting of child support is a substantial change in circumstances justifying the modification of the child support award. The Court finds that Mr. Aguillard is not voluntarily underemployed and acted in good faith when he left his employment.... He justifiably believed that he should pursue other employment, as his job and current salary were not guaranteed at [the first employer].
 

 In addition, the Court does not believe that Mr. Aguillard lost his job at [the second employer] through his own fault or neglect. Mr. Aguillard indicated that the person who had previously had his job returned to claim his employment. The Court believes that Mr. Aguillard has diligently searched for employment with better wages but has so far been unsuccessful.
 

 If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is caring for a child of the parties under the age of five years. LSA-R.S. 9:315.11;
 
 Romanowski v. Romanowski,
 
 2003-0124, p. 5 (La.App. 1 Cir. 2/23/04), 873 So.2d 656, 660. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. LSA-R.S. 9:315(C)(6)(b);
 
 Martello v. Martello,
 
 2006-0594, p. 13 n. 14 (La.App. 1 Cir. 3/23/07), 960 So.2d 186, 197 n. 14. Voluntary unemployment or underemployment for purposes of calculating child support is a question of good faith on the obligor-spouse. In virtually every case
 
 *187
 
 where a parent’s voluntary unemployment or underemployment was found to be in good faith, courts have recognized extenuating circumstances beyond that parent’s control which influenced or necessitated the voluntary change in employment.
 
 Romano'wski,
 
 2003-0124 at p. 6, 873 So.2d at 660.
 

 | (¡Voluntary unemployment or underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses, and its factual determinations will not be disturbed on appeal absent a showing of manifest error. Whether a spouse is in good faith in ending or reducing his or her income is a factual determination which will not be disturbed absent manifest error.
 
 Romanowski,
 
 2003-0124 at p. 8, 873 So.2d at 662. We cannot substitute our findings for the reasonable factual findings of the trial court.
 
 See Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880, 882-83 (La.1993).
 

 Mrs. Aguillard did not testify at trial, and no testimonial or documentary evidence in the record rebutted the testimony of Mr. Aguillard on the circumstances surrounding his change of employment, his resignations, or his inability to find a higher paying job in 2006. Thus, based on our review of this particular record, we cannot find that the trial court manifestly erred or abused its discretion in finding that Mr. Aguillard was not voluntarily underemployed through his own fault or neglect.
 

 USE OF SCHEDULE B
 

 In its written reasons for judgment, the trial court found that Mr. Aguil-lard was entitled to a reduction in his child support obligation and included in its reasons the two Schedule or Worksheet B forms that the court used to determine child support. A Schedule or Worksheet B form is used for shared custodial arrangements. LSA-R.S. 9:315.9 & 315.20. The first worksheet, which covered the period from October of 2005 to March of 2006, indicated the percentage of time spent with the parents as 45% with the father and 55% with the mother, and reduced the child support obligation to $750.96. The second worksheet noted the same percentages of time spent with the children and reduced the obligation to $448.80, beginning in April of 2006.
 

 Mrs. Aguillard divides her assignment of error to the use of Schedule or Worksheet B into two time periods: pre-trial and post-trial. For the pre-trial time period, Mrs. Aguillard argues that the trial court incorrectly used the post-trial 17October 26, 2006, consent judgment to determine the percentages of time spent with the children. She asserts that the trial court should have used the judgment rendered on November 16, 2004, which controlled the physical custody of the children prior to the changes implemented in the consent judgment signed after the trial. In Mrs. Aguillard’s argument on the use of Worksheet B for the posttrial time period, she argues that the calculation by the trial court of a 45%/55% split was wrong and that a calculation using the dates in the 2006 consent judgment reveals a split closer to 43% for the father and 57% for the mother. Although Mrs. Aguillard admits that this court, in
 
 Janney v. Janney,
 
 2005-0507 (La.App. 1 Cir. 7/26/06), 943 So.2d 396,
 
 writ denied,
 
 2006-2144 (La.11/17/06), 942 So.2d 536, recognized a 45.3% time period for one parent as a “shared” custody arrangement, she argues that 43% is too low and is not in the best interest of the children.
 

 “Shared custody” is defined as “a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time.” LSA-R.S. 9:315.9 A(l). The formula used to determine child support for parents with shared
 
 *188
 
 custody adjusts for the duplication of costs that inevitably occur in such shared arrangements.
 
 Janney,
 
 2005-0507 at p. 4, 948 So.2d at 399. In determining whether a shared custody arrangement exists, the trial court is not bound to a threshold percentage based on the number of days each parent has the child.
 
 Janney,
 
 2005-0507 at p. 5, 943 So.2d at 399. Rather, LSA-R.S. 9:315.9 is triggered by a finding of an “approximately equal amount of time.” LSA-R.S. 9:315.9 A(l).
 
 [2]
 

 Unfortunately, the record before us does not include a calculation or summation of the number of days attributed to each parent as holidays and in the summer. The 2006 consent judgment maintained by reference the same holiday schedule ordered in 2004, but the exact number of days available for |sholiday custody is not susceptible to a calculation on the face of the judgment. For example, Easter custody begins for one parent on the “the day the minor children get out of school for the holidays through the midpoint of the holiday week,” and changes to the other parent “from the midpoint of the holidays through the day the minor children return to school after the holidays.” Thus, the number of days is dependent on the dates chosen by the school. The 2006 consent judgment did change the summer schedule from two extra weeks for the father to an equal sharing of the summer vacation period. The 2006 consent judgment also changed the father’s regular custody from approximately 5 days for every 14 to approximately 6 days for every 14 days.
 
 [3]
 

 Initially, we note that, although the weekly custody increased in the 2006 plan, the 2004 plan gave the father 14 extra days in the summer; and the overall goal of the trial court for holidays appeared to be an equal sharing of the children between the parents. The percentages offered by the parties in argument to this court range from approximately 43% to 45.3%. However, based on the only evidence that is in the record, we cannot determine the exact percentages of time spent with each parent for either period. Thus, we do not have a sufficient basis to find that the trial court abused its discretion in finding that the custody order provided for a shared custody arrangement.
 
 [4]
 
 Although the dissent in
 
 Janney,
 
 2005-0507, 943 So.2d at 403 (Hughes, J. dissenting), makes a strong argument that a 10% difference, i.e., a 45/55 split, is not approximately equal, we cannot distinguish
 
 Jan-ney
 
 in this case, and we are bound by its holding.
 
 [5]
 

 I «CONTEMPT
 

 Mrs. Aguillard argues that the trial court erred in failing to hold Mr. Aguillard
 
 *189
 
 in contempt for not paying the court-ordered child support and all of the medical reimbursements that he owed to her, and in dismissing the contempt claim with prejudice. In response, Mr. Aguillard points out that he had a significant reduction in salary, but continued to pay for the private school tuition, medical and dental insurance, school lunches, piano lessons, and some of the monthly child support obligation from October, 2005 to the end of 2006. In January 2006, he stopped paying the monthly child support and, in May or June of 2006, he felt that he could not continue to pay for the piano lessons. Mr. Aguillard also argues that he was owed some medical reimbursements from Mrs. Aguillard, and he was uncertain as to how the set-offs would be calculated. Finally, Mr. Aguillard asserts that Mrs. Aguillard was responsible for many of the continuances that delayed a hearing on the motion to reduce the child support and the rules for contempt.
 

 Unless the action would qualify as direct contempt, a “[wjilful disobedience of any lawful judgment, order, mandate, writ, or process of court” constitutes a constructive contempt of court. LSA-C.C.P. art. 224(2). A constructive contempt for wilful disobedience must be based on a finding that the accused violated a judgment or other mandate of the court “intentionally, knowingly, and purposefully, without justifiable excuse.”
 
 Lang v. Asten, Inc.,
 
 2005-1119, p. 1 (La.1/13/06), 918 So.2d 453, 454 (per cu-riam). A trial court has great discretion in its determination of whether a constructive contempt occurred.
 
 Fink v. Bryant,
 
 2001-0987, p. 7 (La.11/28/01), 801 So.2d 346, 350.
 

 Based on our review of the record on appeal, we cannot say that the trial court abused its great discretion in finding that Mr. Aguillard did not disobey the order of the court without a justifiable excuse. As to Mrs. Aguillard’s argument on the dismissal
 
 with prejudice,
 
 the facts testified to at trial will not be changed simply because the arrearages are recalculated based on the change in the obligations of the parties. Thus, the trial court had the facts before it when it | indismissed Mrs. Aguil-lard’s claim with prejudice. Without a basis for finding an abuse of discretion, we will not overturn the trial court’s judgment dismissing the claim for contempt, with prejudice.
 

 EXECUTORY JUDGMENT
 

 Finally, Mrs. Aguillard complains of the trial court’s failure to render a judgment on the arrearages. However, Mr. Aguil-lard cites to a stipulation contained in the record that reads, as follows:
 

 Ms. Baker [counsel for Mr. Aguillard]: That’s correct. What’s not stipulated to is the arrearage amount. And, your Honor, also included in this prior support order was an order that Mr. Aguil-lard pay 89% and Mrs. Aguillard pay 11% of the medical expenses. Both parties have receipts and have paid medical expenses since September of 2005, and what we will do is have the court when we — the new percentages, assuming there’s any changes, new percentages are awarded then the court will allow us to go back and calculate, you know settle up who owes who what on the medical expenses.
 

 Mr. Wolff [counsel for Mrs. Aguil-lard]: We so stipulate, your Honor.
 

 Ms. Baker: And that also would include other, anything else that is included in the prior support order that’s changed, for example, payment of school fees, tuition and such because the other order was fairly extensive about what should be paid by who.
 

 Based on the stipulation in the record and the change in the child support obli
 
 *190
 
 gation, the trial court had a sufficient basis for deferring the issuance of a judgment ordering payment of the child support ar-rearages, and any award of fees and costs pursuant to LSA-R.S. 9:375. The trial court could have reasonably found that the arrearages had to be recalculated based on the changes in the child support obligation, and thus, a later judgment on the child support arrearages was necessitated.
 

 For these reasons, we affirm the judgment of the trial court. The costs of the appeal are assessed to appellant, Darlene Pierce Aguillard.
 

 AFFIRMED.
 

 WELCH J., concurs without reasons.
 

 [1]
 

 . We also deny as moot Mrs. Aguillard's motion to supplement the record with tire judgment appealed. A copy of die judgment appears of record.
 

 [2]
 

 . The argument has been made that the comments to LSA-R.S. 9:315.9, which are not a part of the statutory language, provide for a bright line test requiring a percentage sharing of no less than 49%/51% for a finding of shared custody. Even if one assumed a comment could control or trump the language of a statute itself, the comment states only that the amount of time should be expressed in percentages, “such as forty-nine percent/fifty-one percent.”
 

 [3]
 

 . The October, 2006, consent judgment, when read on its face, appears to give Mr. Aguillard even more time with the children than the 6 days out of every 14 that he was admittedly receiving by the time of trial. However, based on the briefs, it appears that both patties agree that the Tuesday through Monday physical custody was an alternating week arrangement.
 

 [4]
 

 . We also note that the facts in an earlier case,
 
 Westcott v. Westcott,
 
 2004-2298 (La.App. 1 Cir. 11/04/05), 927 So.2d 377, involved a stipulation of shared custody, and were unusual and peculiar to that case. Thus, we find the case to be distinguishable.
 

 [5]
 

 . Without an
 
 En Banc
 
 reversal, we are bound by a previous decision of this court based on the rules of the First Circuit, Court of Appeal.