STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-47

DAVID LANDRY

VERSUS

CITY OF SCOTT

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 08-20215
SAM L. LOWERY, WORKERS COMPENSATION JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Christopher Richard Philipp
Attorney at Law
P. O. Box 2369
Lafayette, LA 70502-2369
(337) 235-9478
Counsel for Defendant/Appellant:
City of Scott

James Michael Stefanski
Edwards, Stefanski, et al.
P. O. Drawer 730
Crowley, LA 70527-0730
(337) 783-7000
Counsel for Plaintiff/Appellee:
David Landry

**SAUNDERS, Judge.**

This is a workers' compensation case where the employee injured his shoulder within the course and scope of his employment in April of 1998. Although the employee had other medical conditions prior to the work accident, they did not prevent him from working. After this work accident, the employee never returned to work, and his condition deteriorated.

The workers' compensation judge (WCJ) found that the employee's various medical diagnosis that rendered him unemployable were causally related to the shoulder injury that occurred in April of 1998. Thus, the WCJ determined that the employee was permanently and totally disabled under La.R.S. 23: 1221(2)(c). The employer appealed, asserting two assignments of error. We find that the record supports the WCJ's judgment, and, therefore, affirm.

**FACTS AND PROCEDURAL HISTORY:**

David Landry (Landry) was employed by the City of Scott (Scott) on April 23, 1998. On that date, Landry was operating a backhoe. After having dug a hole with the backhoe, Landry fell into the hole and injured his shoulder.

Landry underwent a surgical repair of his rotator cuff by Dr. Charles Olivier, an orthopedic surgeon, and thereafter, both before and after the surgery, was treated by Dr. Linda Oge, his general practitioner. Although gainfully employed prior to this accident, Landry's medical condition worsened to where he was determined by Social Security to be totally disabled. He has been receiving Social Security benefits since that determination, and his medical bills have been paid by his wife's insurance.

Since the accident, Scott has paid Landry temporary, total disability benefits and supplemental earnings benefits with one interruption of those benefits not relevant to this proceeding. Scott terminated Landry's benefits after 520 weeks of

paying benefits, alleging that it had fulfilled its obligation to Landry.

Landry then filed a disputed claim for workers' compensation benefits, contending that he was totally and permanently disabled under La.R.S. 23:1221(2)(c). The matter was tried on June 24, 2009. The issue before the WCJ was whether Landry's other medical problems that arose or worsened following his accident were causally related to the work injury suffered in April of 1998.

The WCJ ruled that Landry was totally and permanently disabled and that his disability was due to medical conditions casually related to Landry's initial shoulder injury. Scott has appealed this judgment, alleging the following two assignments of error:

**ASSIGNMENTS OF ERROR:**

1.  The WCJ erred when it concluded that Landry proved, by clear and convincing evidence, unaided by any presumption of disability, that his work accident caused him to be permanently and totally disabled.

2.  The WCJ erred when it considered Landry's unrelated medical conditions in determining the status of disability.

**ASSIGNMENT OF ERROR NUMBERS ONE AND TWO:**

In its first assignment of error, Scott contends that the WCJ erred in concluding that Landry proved, by clear and convincing evidence, unaided by any presumption of disability, that his work accident caused him to be permanently and totally disabled. In its second assignment of error, Scott asserts that the WCJ erred in considering Landry's unrelated medical conditions in determining the status of disability. Scott's second assignment of error assumes that Landry's medical conditions are unrelated to his work injury. Whether the WCJ was proper in finding that these medical conditions were related to Landry's initial shoulder injury is necessarily reviewed by this court in addressing Scott's first assignment of error.

2

Therefore, as Scott did in its brief, we will address both assignments under a single heading.

A WCJ's determination of whether an employee is totally and permanently disabled is a question of fact and, as such, is subject to the manifest error, clearly wrong standard of review. *Granger v. Nelson Logging*, 96-223 (La.App. 3 Cir. 12/4/96), 685 So.2d 400. Louisiana Revised Statutes 23:1221(2)(c) states, in pertinent part, the following:

> [C]ompensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

In this case before us, the WCJ ruled that Landry had proved, without the aid of a presumption of disability, by clear and convincing evidence, that he was permanently, totally disabled. The WCJ based his ruling on a finding that Landry was unemployable due to Landry's weight gain, pain, depression, knee injury, memory loss and other neurological symptoms that were causally related to his on-the-job shoulder injury. Scott argues that this finding was in error, as it is unsupported by the evidence. In order to be successful in this appeal, Scott must show that the WCJ was unreasonable in reaching these conclusions.

After a thorough review of the record, we find sufficient evidence to uphold the WCJ's determination that Landry was "physically unable to engage in any employment or self-employment." La.R.S. 23:1221(2)(c). That evidence is the testimony of Harris N. Rowzie, a licensed rehabilitation counselor who saw Landry prior to trial. Rowzie testified to the following:

3

Q    [I]t was your understanding that . . . [Landry's] problems were exacerbated, as put in [Dr. Oge's] letter - - as per her letter, itself, correct?

A    Yeah, that's my understanding.

Q    Okay. And from a vocational standpoint, what does that mean?

A    Well, it basically means that he's . . . in such a place, he's got so many different conditions that I . . . can't - - I was just trying to put somebody to work. And I basically try to look at the *Banks'* criteria, going down the seven criteria that they. . . had done: He can't go back to his past relevant work. He can't find other work in a . . . similar job with a different company. He's basically, because of all the other injuries, he's not trainable. At the eleventh . . . grade level, I think it would be facetious to try to put him into - - into a work of his - - of - - of - -

    [WCJ]:

Q    So, he's unemployable?

A    - - something. So, I think he is unemployable.

    [WCJ]:

Q    There's a difference in disabled and unemployable. Are you saying he's unemployable?

A    I think he is. Yes, sir.

Given this testimony, we find no error by the WCJ in finding that Landry was "unemployable." Next, we must establish whether there exists a reasonable basis in the record for the WCJ to find that Landry's status as "unemployable" is due to his work accident.

As we stated previously, our analysis of this issue subsumes the question presented in Scott's second assignment of error, i.e., that the WCJ erred in considering Landry's unrelated medical conditions in determining the status of disability. This is so because should we find that Landry's medical conditions are related to his work injury, then the WCJ was proper in considering them. An opposite

4

finding would require that we find credence in Scott's second assignment of error.

After reviewing the record and considering the applicable standard of review, we find ample evidence to uphold the WCJ's judgment. The testimony of Landry provides part of our basis for affirming the WCJ. Landry testified on his behalf to the following:

> Q    Counsel asked you questions about a - - gave you a list of medical problems that you were being treated for. You did not - - those medical problems that you were treated for prior to your accident in April of 1998 never kept you from working; is that correct?
>
> A    No, sir, it sure didn't.
>
> Q    And is it also correct that after the accident, all of your symptoms and problems increased?
>
> A    Sure did. Got real bad [sic]. It's bad now.
>
> Q    The way you are right now is not the way you were in April of 1998; is that correct?
>
> A    No, sir.

Dr. Linda Oge, Landry's treating physician, was not deposed. Rather, the parties stipulated that Dr. Oge's testimony would consist of a letter signed by her. This letter, dated May 14, 2009, was written by Rowzie. The letter's contents follow:

> This is to confirm our rehabilitation conference of 7 May 2009 in which we discussed Mr. Landry's physical condition.
>
> If you recall, I stated that my reading of the file indicated he had multiple diagnosis concurrent to a worker's compensation claim in which he injured his right shoulder and tore his rotator cuff. The question was could the initial diagnosis along with pain be a contributing cause to the other physical and mental diagnosis, which he has, and also was the knee injury concomitant with the worker's comp injury. You stated that with his weight gain, his pain, and depression also raised his blood pressure, as well as caused further problems of sleep apnea, which caused further combination of problems with GERD and possibly some memory loss and other neurological symptoms.
>
> If this letter is accurately stated about this client, I would appreciate your

5

ascent by signing in the space provided. Please date this. Additionally, if you feel there are other comments that need to be made and/or my understanding of our meeting was incorrect or in error, please signify what you feel was in error or needed some modification and write it in the space provided.

This letter did not have any comments or suggestions entered by Dr. Oge. Further, the letter was signed by Dr. Oge and dated May 26, 2009. Rowzie, when questioned on the contents of the letter that he had written, testified to the following:

Q    Now, you met with Dr. Oge, at her office, for thirty minutes on or about May 7, 2009; is that correct?

A    That's correct.

     . . . .

Q    Okay. And you apparently posed some hypothetical questions or some questions to her concerning her opinion regarding . . . these other problems, as it related to the shoulder?

A    Right.

Q    Okay. And, because I'm reading . . . from your letter where you recapitulated her response, and it looks like you said that the question you wanted her to address was . . . whether the initial diagnosis, and I assume you're referring to [Landry's] shoulder; is that right?

A    That's correct.

Q    Okay. Whether his shoulder, along with pain, could be a contributing cause to the other physical and mental diagnosis which he has?

A    That's correct.

Q    Okay. When you say " physical and mental diagnosis that he has," you're referring to the pre-existing conditions we went through with Mr. Landry during his direct testimony, which was fibromyalgia, the rheumatoid arthritis, the avascular necrosis, et cetera?

A    Correct.

Q    Okay. And she told you that in her opinion, the way you phrased

the question, that his weight gain and his pain and his depression raised his blood pressure?

A  Yes.

Q  Okay.  And his weight gain, his pain and his depression caused further problems with his sleep apnea?

A  Correct.

Q  And his pain and weight gain and depression caused problems with gastroesophageal reflux disease?

A  Correct.  GERD.

Q  GERD?  And possibly some memory loss, those other - -

A  Right.

Q  What - - what was her scientific basis for arriving at that conclusion?

A  I think it was more of her experiential background dealing with people who have been removed from the workforce.  She'd seen that when they were removed from the workforce that they would have concomitant problems with high blood pressure, weight gain, depression, those three, especially.  With him, it's - - its's like a slow downward spiral.

. . . .

Q  So, I'm just asking you, the scientific basis of Dr. Oge's conclusions.  And your answer is, that she's probably basing it on her experience in treating David Landry?

A  Correct.

Landry and Rowzie's testimony, coupled with the letter signed by Dr. Oge, provide a reasonable basis for the WCJ to find that Landry was permanently and totally disabled under La.R.S. 23:1221(2)(c).  Given this evidence, it is not unreasonable for the WCJ's to find that Landry's weight gain, pain, depression, knee injury, memory loss, and other neurological symptoms were causally related to his on-the-job shoulder injury, and those conditions rendered Landry unemployable.

7

Accordingly, we find that Scott's assignments of error both lack merit.

**ANCILLARY MATTER:**

Landry, in his answer to Scott's appeal, requested attorney's fees. We deny this request.

Louisiana Revised Statute 23:1201(F) provides, in pertinent part:

> Failure to provide payment in accordance with this Section . . . shall result in the assessment of . . . reasonable attorney fees for each disputed claim. . . . An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
>
> (1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
>
> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

"The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact which will not be reversed absent evidence of manifest error." *Ardoin v. Kipling Korner Grocery*, 01-1596, p. 3 (La.App. 3 Cir. 4/17/02), 824 So.2d 371, 374 (citation omitted). When a judgment is silent regarding a request for attorney's fees, it must be construed as a denial of that request. *Desoto v. Desoto*, 04-1248 (La.App. 3 Cir. 2/2/05), 893 So.2d 175.

Landry's pre-trial statement listed "Pentalties and attorney's fees for wrongful termination of compensation benefits" under the heading "Issues to be Litigated at the Hearing." The WCJ's judgment was silent regarding whether Landry was entitled to

8

attorney's fees.  Thus, the WCJ's silence is equivalent to a judgment denying Landry's request.

In his answer to appeal, Landry states, "Counsel for David Landry prays for attorney's fees in the amount of SEVEN THOUSAND FIVE HUNDRED and NO/100 ($7,500.00) DOLLARS; and that as thus amended the amended said judgment be affirmed and the appellant be condemned to pay the costs."  It is indeterminate whether Landry is requesting attorney's fees for work done on appeal or requesting that this court amend the WCJ's judgment to award Landry attorney's fees for the case below.  Regardless, we deny his request because the WCJ was not manifestly erroneous in concluding that Scott reasonably controverted the case below, and we find that the appeal by Scott, while unsuccessful, was also reasonably controverted.

**CONCLUSION:**

Scott raised two assignments of error, that the WCJ erred in concluding that Landry proved, by clear and convincing evidence, unaided by any presumption of disability, that his work accident caused him to be permanently and totally disabled and that the WCJ erred in considering Landry's unrelated medical conditions in determining the status of disability.  We found no merit to either assignment.

Additionally, Landry requested attorney's fees.  We deny this request.  All costs of this appeal are assessed to Scott.

**AFFIRMED.**

9