LOLLEY, J.
11 This appeal arises from the Thirty-Seventh Judicial District Court for the Parish of Caldwell, State of Louisiana, which rendered a final judgment in favor of Holly Brossett regarding matters incidental to divorce from Christopher Bros-sett. Christopher now appeals that judgment, which we affirm for the following reasons.
Facts
Holly and Christopher Brossett married August 9, 2003, and had one child during their marriage, born July 1, 2009. Sometime after the birth of their child, Christopher fathered two other children, bom outside of marriage, to two different women. Holly filed for divorce, alleging adultery, and a judgment of divorce was granted by the trial court.
On March 5, 2014 (the “initial trial”), the parties went to trial to determine certain matters incidental to the divorce, including; custody, child support, interim spousal support, and payment of clinical psychologist, Dr. Mark Vigen, for his evaluation. At the initial trial, joint custody of the couple’s child was stipulated to by consent agreement, with Holly being the domiciliary parent and Christopher having visitation according to the agreed upon schedule. The parties requested judicial determination only as to the location for exchanges should Holly decide to relocate to New Orleans. It was also stipulated by consent agreement that Holly would accept interim spousal support in the form of Christopher’s continued payments on the vehicle she was driving. During the calculation of child support obligations, both parties presented financial records and the court imputed a monthly income of $20,000.00 to Christopher in order to *474 calculate each | parent’s share of the support obligation. Judgment was entered pursuant to the consent agreement, and the court issued written reasons for its initial judgment.
Holly filed a motion for partial new trial and a subsequent supplemental- motion concerning the issues of the child dependency exemption, payment of noncovered medicals, and interim spousal support. After a hearing on those issues, another judgment, modifying and amending the initial judgment, was rendered (the “final judgment”), and it is from that final judgment that this appeal has been taken.
Discussion

Calculations of Gross Income for Child Support

As his first assignment of error, Christopher alleges that the trial court erred by imputing an income of $20,000.00 a month to him based on his financial information. He maintains that the trial court erred in ordering him to pay $1,902.84 a month in child support based on the alleged improperly imputed income. Christopher argues the trial court gave too much weight to the bank statements presented and not enough to the IRS audit from 2011.
The imputation of income for the purposes of calculating the child support obligations of' each parent took place at the initial trial. At that time, both parties presented information from which the court was able to determine their respective incomes for the purposes of allocating percentages in accord with Worksheet A and the shared income model per La. R.S. 9:315 et seq.
I,«¡The following items were introduced to prove Holly’s income:
• 2013 IRS Form W-2 showing annual income of $67,727.34; and,
• Current pay stubs from 2014.
Holly worked as a nurse part-time during the marriage and was the primary care taker for their child. Once the parties separated, Holly began working full time.
The following items were introduced to prove Christopher’s income:
• 2013 IRS Form 1099-MISC showing annual income of $65,520.38;
• 2012 IRS Form 1099-MISC showing annual income of $59,405.46;
• 2011 IRS Form 1099-MISC showing annual income of $93,112.00;
• 2012 IRS Form 1040;
• 2011 IRS Form 1040 and IRS audit— claiming Adjusted Gross Income of $12,037.00;
• Bank account statements (three accounts in Christopher’s name and one account in the name of Trailer Park Choppers); and,
• Financial statements for loan applications.
Christopher worked for. his father’s company, Brossett Corporation, and was issued an IRS Form 1099-MISC for his work as an independent contractor fixing hyperbaric equipment. Christopher also owns a business, Trailer Park Choppers, which is an entity he created to acquire a bar, Sixth Street Tavern, and also to “flip” high-end automobiles, boats, and motorcycles. Christopher stated that he lost money by “wheeling and dealing” and did not profit from his business enterprises. The trial court gave Christopher |4the opportunity to explain the discrepancies between his tax returns an<j the deposits made into the four different accounts.
Christopher claimed the bank statements were misrepresentations of his income because he exercised an unlawful practice in his business called “check-kiting.” Christopher explained to the trial court that checks without sufficient funds *475 would be written to acquire assets, and then more insufficient checks from other accounts would ■ be written to cover the first check, in the -hopes the asset could be sold quickly and the proceeds deposited before the checks were cashed. During cross-examination, Christopher was asked about each deposit and was able to point to and discount deposits which were duplicates because of the check-kiting scheme. Christopher was also, questioned about several large deposits which he stated were loans from his father, his .investors, or the sister of the mother of one of his children. Christopher claimed that his financial statements, which were prepared during the process of applying for loans from a bank, fraudulently inflated his income in order to obtain the loans.
Further testimony reyealed that Christopher had made several .large payments to Heather Barnett and Stephanie Richard, mothers of Christopher’s other children, and he had been paying rent at Ashford Apartments for Barnett. Holly testified that during the marriage Christopher had driven many high-end cars and had owned several boats and motorcycles. Christopher acknowledged the sale of a Lamborgini during the period for which his financials were being assessed.
Un its written reasons for the judgment, the trial court noted, “to determine Mr. Brossett’s accurate income is a difficult matter.” The trial court also observed Christopher’s “cavalier” attitude about his unlawful practices and that -he was “obviously not truthful” in his financial statements. The trial court gave extensive reasoning as to. how it arrived at the decision to impute a particular monthly income to Christopher, evaluating not only his income tax records, but also his bank statements, deposits,' spending, and lifestyle.
The child support guidelines set forth in La. R.S. 9:315 et seq., are to be used in any proceeding to establish or modify child support. Hatfield v. Hatfield, 49,493 (La.App.2d Cir.11/19/14), 155 So.3d 70, 75, writ denied, 2014-2680 (La.03/27/15), 162 So.3d 384. The guidelines are not absolute and only create a rebuttable presumption that the child support calculation obtained from following the guidelines is correct. La. R.S. 9:315.1. For the purpose of determining child support, whether the obligor parent is in good faith in reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the trial court’s wide discretion. State ex rel. Douglas v. Williams, 46,520 (La.App.2d Cir.10/05/11), 76 So.3d 103.
The trial court’s credibility determinations regarding a party’s sources of income are entitled to great weight. Armstrong v. Rayford, 39,653 (La.App.2d Cir.05/11/05), 902 So.2d 1214, 1218.
When a party alleges that income is being concealed or underreported, the court shall admit evidence relevant to establishing the factual income of the party. La. R.S. 9:315.11(A). Thé court is not limited to, but may consider the following sources of income: redirected income, deferred income, and standard of living and assets. Id. One cannot avoid all or part of his child support obligation by exercising exclusive control over a corporation wholly owned by him in order to limit his own salary. Scott v. Scott, 43,455 (La.App.2d Cir.08/13/08), 989 So.2d 290, 294; Sawyer v. Sawyer, 35,583 (La.App.2d Cir.11/02/01), 799 So.2d 1226, writ not cons., 2001-3189 (La.02/08/02), 808 So.2d 349, recons, denied, 2001-3189 (La.03/22/02) 811 So.2d 935. If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically of mentally incapacitat *476 ed, or is earing for a child of the parties under, the age of five years. La. R.S. 9:315.11(A). Income includes .potential income, if' a party is voluntarily unemployed or underemployed. La. R.S. 9:315(C)(5)(b); Fuqua v. Fuqua, 45,555 (La.App.2d Cir.09/22/10), 47 So.3d 1121, 1126.
This court has held that a trial court does not have to make a specific finding of voluntary underemployment to impute a potential income pursuant to La. R.S. 9:315(0)(5)(5).-' In Fuqua the trial court had determined that the evidence was admittedly conflicting. The trial court found the father made efforts to deliberately impoverish himself to reduce his child support obligation. Even with economic downturn affecting businesses, the timeliness of the family run business slashing his income was suspicious of a mutual agreement to minimize his income. In Fuqua, |7we determined the trial court had not abused its discretion. It was clear that even on the impassive record, the way the obligor parent had handled money raised considerable questions as to his good faith. In Fuqua, we noted that the imputed income appeared to strain the upper limits of the trial court’s discretion, but declined to disturb factual determinations of the trial court given that its discretion in these matters is so vast and there was no manifest error or clear abuse of that discretion. Fuqua, at 1126.
In Sawyer the evidence adduced at trial demonstrated that despite the obligor parent’s claims of limited income, the total income of the parties had been far in excess of what was shown on the tax returns. This was evidenced by luxury vacations, use of private jets, owning an extravagant home, expensive vehicles, a pool house, and a boat — items certainly indicative of greater income than what was reported on the husband’s W-2 forms. Control over the family business allowed Sawyer to conceal his income and attempt to reduce his support obligation. Sawyer also presented a situation where assets were moved and sold in a fashion as to disguise the actual proceeds received, and “[although the trial court was unable to concretely calculate John’s income, the record amply supports the trial court’s finding that John hid his extensive income through the use of these closely held corporations.” Sawyer, at 1233. In Sawyer, we again declined to disturb the trial court’s discretion.
The instant case follows a very similar set of circumstances as the two discussed herein: the trial court was presented with complicated and confusing accounting that contradicted the lifestyles of the parties involved. [RIn instances such as these, the trial court must carefully consider the evidence presented and impute a potential income to the obligor parent. Here, the trial court imputed a large annual income to Christopher as a result of its factual findings, and we defer to trial court’s discretion in determining • the credibility of the witnesses and the weight of evidence. At the initial trial, the trial court had the opportunity to observe Christopher’s demeanor and assess his credibility during the lengthy and exhaustive examinations concerning his finances. Christopher argued at trial that his annual income was closer to the $12,000.00 AIG from his 2011 tax return or at the most the amount of his 1099-MISC from his father’s company, since Christopher claims he did not profit off his business deals. However, the bank statements'in evidence showed deposits for Christopher averaging about $85,000.00 a month. It was within the trial court’s discretion to impute income to Christopher considering the allegations of underreport-ing his income.
The trial court.also had discretion to deviate from the guidelines in the interest *477 of fairness to both parties. Reasons were provided for the imputation of $20,000.00 a month:
In determining [Christopher’s] actual gross income, the Court is not limited to his income tax records alone. [Holly] argues that [Christopher’s] monthly income is in excess of thirty thousand dollars [$30,000.00] per month. The Court does not believe he is making that much money. The evidence as to his lifestyle does not indicate such earning, nor does there appear to be any great amount of accrued wealth. However, the bank records, spending records, and spending habits, including restaurants, casinos, hotels, and credit cards, do show an excess expenditure above his stated income.
| flIt is cléar from the record that the trial court gave consideration to all the evidence when determining an amount of income to impute to Christopher, whose business accounting practices made it near impossible to decipher his true gross income.
Thus, considering the instant record in its entirety, we find that the trial court did not abuse its discretion in imputing a $20,000.00 monthly income to Christopher. We also find that, although neither party submitted a verified statement of income, the trial court was within its discretion in finding Holly’s proof of income acceptable. The trial court used Obligation Worksheet A in accordance with La. R.S. 9:315.8 and 9:315.10, finding Christopher to have a 78% share of the combined income, which after deduction of the child’s health insurance premium (paid directly to Holly per the final judgment) comes out to an obligation of $1,902.84 per month. We find no abuse of discretion by the trial court in imputing an income to Christopher or in its support obligation calculations, and for these reasons, this assignment of error is without merit.

Deduction of Other Support Obligations

In his second assignment of error, Christopher alleges the trial court failed to give credit for the child support obligations owed by him for his two other children. We find this assignment of error has no merit.
The initial trial revealed that Christopher is also paying child support for his two children outside of his marriage to Holly. According to Christopher’s testimony, the support payments are $500.00 a month per child, which was agreed to by each mother by consent agreement. Evidence |inat trial showed that Christopher does not follow the judgments, routinely making much higher payments than required to both other mothers.
The Louisiana Supreme Court has stated that deviations should be allowed only in limited circumstances so that the function of the guidelines, which is to provide adequacy and consistency in child support awards, is preserved. Guillot v. Munn, 1999-2132 (La.03/24/00), 756 So.2d 290, 297. Although the amount of non-court-ordered support required by other domiciliary children is not automatically deducted from monthly gross income for purposes of establishing child support obligation, it would be abuse of discretion to automatically fail to even consider it. Pratt v. Wells, 2002-1032 (La.App. 4th Cir.02/26/03) 840 So.2d 1230.
Louisiana R.S. 9:315 et seq. sets forth the guidelines a court is to follow in setting child support. The child support guidelines define “Adjusted gross income” as: gross income, minus amounts for preexisting child support or spousal support obligations paid to another who is not a party to the proceedings, or on behalf of a child who is not the subject of the action of the court, these guidelines maybe subject to modification. La. R.S. 9:315(C)(1). Loui *478 siana R.S. 9:315.1, which addresses deviation from the guidelines, in pertinent part provides:
A. The guidelines set forth in this Part are to be used in any proceeding to establish or modify child support filed on or after October 1,1989. There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
B. (1) The court may deviate from the guidelines set forth in this Part if their application would not be in the best interest of the child or would be inequitable to the parties. The court shall give specific oral or written reasons for the deviation, including |ua finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings....
C. (3) [I]n a case involving one or more families, consisting of children none of whom live in the household of the nondo-miciliary parent but who have existing child support orders (multiple families), the court may use its discretion in setting the amount of the basic child support obligation, provided it is not below the minimum fixed by R.S. 9:315.14.
Generally, the trial court is vested with much discretion in fixing support, and its reasonable determinations will not be disturbed unless there is a clear abuse of discretion. Curtis v. Curtis, 34,317 (La.App.2d Cir.11/01/00), 773 So.2d 185, 196. Deviations by the trial court from the guidelines shall not be disturbed in the absence of manifest error. Id.
Here, the trial court considered Christopher’s other support obligations when imputing income, but ultimately decided it was not in the best interest of the child to credit Christopher for his other child support payments. The trial court gave specific written reasons for its decision, noting the sporadic payment of child support to the other mothers. In its written reasons for judgment, the trial court explained that it would use the evidence of other child support payments for the purpose of establishing an accurate income for Christopher only, stating:
Mr. Brossett was also questioned about Child Support payments he made to two other children born out of wedlock, after the parties separated. Court records show that he is ordered to pay five hundred dollars [$500.00] per month to each of these two children. These bank records reflect significant payments to both the women on behalf of these children. Various checks range as high as nine thousand dollars [$9000.00] per month. True there are months when payments were not made_it is relevant to this court in trying | 1{⅜0 determine what his actual income may be in view of the confusing testimony presented.
As the evidence demonstrated, Christopher has on numerous occasions paid over ten times what he was supposed to pay for child support for his other children. It would be inequitable to give a credit to Christopher for a consent agreement that he himself has seldom, if ever, followed. The confusing testimony concerning Christopher’s finances made it near impossible to determine his monthly income. The inconsistent payments that he currently makes on his other support obligations indicate that deduction of a set monthly amount in the form of a credit would be contrary to the purpose of the guidelines, which is to preserve the adequacy and consistency of child support payments. Further, there is no indication that Chris *479 topher presented evidence that a deviation was warranted and that a credit should be allowed. Therefore, the trial court was within it’s discretion when it considered the other children and other support obligations only for the purpose of imputing Christopher’s monthly income and declined to include preexisting child support payments on the obligations worksheet. For this reason, this assignment • of error is without merit.

Interim, Spousal Support

In his third and fourth assignments of error, Christopher argues that the trial court improperly contravened an agreement by the parties regarding interim spousal support, and the award of interim spousal support was in error because Holly failed to establish a need for support or the ability of Christopher to pay such support. We disagree.
| lain a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of á proceeding to terminate the marriage. La. C.C. art. 111. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage. La, C.C. art. 113(A). If a claim for final spousal support is pending at the time of the rendition of the judgment of divorce, the interim spousal support award shall thereafter terminate upon rendition of a judgment awarding or denying final spousal support or 180 days from the rendition of judgment of divorce, whichever occurs first. La. C.C. art. 113(B).
Whether the amount of spousal support awarded through a consent judgment can be modified depends upon the language employed in the consent judgment. Gebhard v. Gebhard, 2010-1412 (La.App. 4th Cir.02/16/11), 60 So.3d 717, 721. To bar modification of the duration and/or amount of spousal support, the consent judgment must evidence clear intent of the parties to do so. Id. The trial .court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. Shirley v. Shirley, 48,635 (La.App.2d Cir.10/16/13), 127 So.3d 935, 941.
| uHolly made judicial demand for interim and final support in the petition for divorce., The record reflects that both Holly and Christopher were questioned at the initial trial about the spousal support agreement for Christopher to continue payments on Holly’s vehicle.' According to Holly’s testimony, during’their separation, she was not receiving any support from Christopher for herself or their child. The trial court did not address interim spousal support in the initial judgment, noting in the reasons for judgment:
The court understood that Mrs. Brossett would accept payments made by Mr. Brossett on the vehicle she was driving as spousal support.' That statement was confirmed by counsel near the end of the hearing. Accordingly the court accepts that as an agreement between the parties and makes no finding herein on that issue.
Holly then filed a motion for partial new trial to address the issue of interim spousal support and whether the agreed upon payments were being made. The trial court ordered the stipulation of the parties to be enfdrced, and the initial judgment was amended to include interim spousal support. The resulting final judgment ordered Christopher to make directly to Hoi *480 ly the $1,200.00 agreed upon monthly payment for her vehicle. The final judgment also ordered Christopher to pay Holly interim spousal support retroactive from the date of judicial demand, terminating six months after divorce. Christopher was given credit for all payments that he made during that time.[1]
Christopher argues that the trial court erred in contravening the agreement of the parties. According to Christopher, the agreement was for | ^“vehicle payments,” and he never agreed to pay a monetary amount to Holly for spousal support. However, Christopher failed to make the vehicle payments as agreed, and at the subsequent hearing the trial court amended the judgment to enforce the payment of interim support. Although the parties, when questioned, acknowledged their agreement for the vehicle payments, nothing indicated that either wished to bar modification of such agreement. When Christopher failed to make the vehicle payments as the parties agreed, it was within the trial court’s discretion to determine if interim or final spousal support should be awarded or modified.
Christopher also argues the trial court erred because Holly failed to prove her need for and his ability to pay interim support. Once again, the trial court has wide discretion in determining if an award of interim spousal support is proper. Holly testified at trial that during the marriage Christopher provided her with a vehicle. Further, it was clear Holly needed a vehicle, and there was evidence that Christopher possessed multiple vehicles at any given time. The purpose of interim support is to maintain the status quo without unnecessary economic hardship on either party. Evans v. Evans, 49,160 (La.App.2d Cir.06/25/14), 145 So.3d 1093, 1094. In ordering Christopher to make interim spousal support payments to Holly for her vehicle, the trial eourt considered need, ability, and continuation of the provided for lifestyle. Therefore, no abuse of discretion is found in the award of interim spousal support.
As stated, interim spousal support may be extended for up to 180 days beyond final judgment of divorce when a claim for final spousal support is Impending. La. C.C. art. 113. Here, Holly’s demand for final support was pending at the time the final judgment of divorce was rendered and continuation of interim support for 180 days beyond the judgment of divorce was proper by operation of law. For these reasons we find that the trial court did not abuse its discretion in awarding support, and we find no merit in Christopher’s assignments of error.
Conclusion
Based on the foregoing, we affirm the judgment of the trial court in favor of Holly Amanda Wilkins Brossett. All costs of this appeal are assessed to the appellant, Christopher Jason Brossett.
AFFIRMED

. Petition for divorce was filed on August 4, 2011, and divorce became final on January 23, 2013, making the period for interim spousal support from August 4, 2011 until July 23, 2013.