Judgment rendered January 15, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,983-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BART TIMOTHY BORDELON                    Plaintiff-Appellant

versus

JAMIE LYNN DIFRANCESCO                    Defendant-Appellee
BORDELON

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 540,134

Honorable Katherine Clark Dorroh, Judge

* * * * *

KENNETH R. ANTEE, JR., APLC              Counsel for Appellant

JAMES H. ASKEW, APLC                     Counsel for Appellee

* * * * *

Before COX, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

This civil appeal arises out of the First Judicial Court, Parish of Caddo, State of Louisiana, the Honorable Katherine Dorroh, Judge, presiding. The instant appeal was filed by the plaintiff, Bart Timothy Bordelon, from the latest in a series of child support judgments in an ongoing attempt to have his child support obligation to his former wife, the defendant, Jamie Lynn Difrancesco Bordelon (now Standridge), dating back to 2017 reduced, claiming error, *inter alia*, in the trial court's rejection of his claim of a material change in his circumstances. For the reasons set forth below, we affirm the judgments of the trial court.

## FACTS/PROCEDURAL BACKGROUND

Bart Bordelon and Jamie Bordelon Standridge were married on April 13, 2002. They had four children together during the marriage, and Mr. Bordelon adopted a child born to Mrs. Standridge during a previous marriage. The parties physically separated in April 2010 and were divorced on December 23, 2010.

The custody of the children was provided for in detail in a Joint Custody Implementation Plan ("JCIP") approved by the trial court on December 17, 2010. The JCIP named Mrs. Standridge as the domiciliary parent of the children and their primary physical custodian. The custody arrangement, save for a few minor changes, remained in full force and effect until it was modified by consent in open court on July 1, 2019.

The issues of child support were addressed several times by the trial court since the parties' separation in April 2010. The initial child support award is set forth in a judgment rendered on November 30, 2010, and signed and filed on December 17, 2010. Child support was again addressed by a

judgment rendered on November 20, 2011, which was signed and filed on November 18, 2011.

Employed as a medical "headhunter" at Magee Resources during the marriage, at some time after the divorce, Mr. Bordelon left his employment with Magee Resources to work[1] for Logic Nation and its affiliate, Magcon.[2] Mr. Bordelon left his job with Magcon in June 2014.[3] Thereafter, Mr. Bordelon filed a rule seeking a reduction in child support on July 28, 2014. After a hearing, on September 29, 2015, a judgment was rendered modifying the earlier judgments in some respects.[4] At the hearing, Mr. Bordelon testified under oath to the following:

A. His house located in Southern Trace was on the market because he could not afford it, and intended to keep it on the market until his house was sold. (He still owned and resided in this house until several years later);

B. He voluntarily quit a job with a company known as Magee where he made $228,132.00 in 2010; $209,249.00 in 2011; $267,492.00 in 2012; and $292,214.00 in 2013; to take a job developing a company known as Logic Nation or Magcon;

---

[1] Mrs. Standbridge notes that Mr. Bordelon testified under oath that he left his job at Magee where he made $292,214.00 in 2013 to help develop Logic Nation/Magcon.

[2] Logic Nation was a software company, and Magcon was, in Mr. Bordelon's own words, "a tour with social media celebrities" which involved tween/teen-aged kids with large followings on social media (Twitter, Vine, and Instagram) interacting with kids or their "followers" on social media. The company put together events and sold tickets to the events in the various cities in the "tour" so the fans (most of whom were young girls) could come and meet the "social media celebrities." From 2013 to 2014, Mr. Bordelon and Magcon hosted several of these events that were headlined by Cameron Dallas, an influential young social media personality.

[3] In 2014, Mr. Dallas withdrew from his business dealings with Magcon. Later, attempts were made to keep Magcon going, but ("like any boy band[,] they split apart . . . and decided to go their own way.") Eventually, Magcon suspended its operations.

[4] The "Joint Obligation Worksheet," Joint Exhibit #1, filed in into the record on September 29, 2015, is the basis upon which the September 29, 2015, judgment was predicated. The worksheet shows that the income of Mrs. Standridge was $0.00 per month, and Mr. Bordelon stipulated that he had the ability to earn $11,500.00 per month (or $138,000.00 per year).

C.      He was working on other "deals" that would make him money;[5]

D.      He no longer received any income from the businesses named Logic Nation and/or Magcon, but he could make probably $11,500.00 per month; and

E.      He borrowed over $12,000.00, from his parents during May 2017.

At the time of the consent decree, Mr. Bordelon was in the process of starting his own medical recruitment firm.

Shortly after the parties entered into the consent judgment, Mr. Bordelon returned to his position at Magcon full-time.[6] Mr. Bordelon declined to relocate and work on other opportunities with the company, opting instead to work his recruiting business on a full-time basis. The State of Louisiana, on behalf of Mr. Bordelon, filed a "Motion to Reduce Child Support" on May 17, 2017. According to Mr. Bordelon, the reason for this motion was a significant reduction in his income caused by the changes in his employment during 2016. Mr. Bordelon got married to his current wife, Ashley, and the newlyweds enjoyed a three-week European honeymoon very soon after the motion to reduce child support was filed.

The "Motion to Reduce Child Support" was amended to include a request for modification of custody. On July 1, 2019, a judgment on pending rules was rendered modifying the previous custody judgment, awarding the parties joint custody, with Mrs. Standridge again named as

---

[5] Mr. Bordelon went back to the business he knew, which was "headhunting" or recruiting for the health care field. He started his own firm when Magcon shut down.

[6] Magcon secured a recommitment from Cameron Dallas to participate in their events. After Mr. Bordelon's return to Magcon, between January and September 2016, there were several events. However, Dallas once again terminated his business relationship with Magcon, and the company suspended its event-hosting operations.

domiciliary parent, and specific details set forth in the JCIP attached to the judgment. A judgment in accordance therewith was signed on August 16, 2019. The judgment further ordered that the children's medical expenses be paid 50/50 by the parties, and Mr. Bordelon was to remain 100% liable for the children's private school tuition.

On September 24, 2019, Mrs. Standridge filed her first petition seeking past due child support from Mr. Bordelon. At that time, due to continuing discovery issues, the uncertainty and continuing change in Mr. Bordelon's employment, and the lavish lifestyle he continued to live despite his claims that he had a reduced income, the trial judge appointed Susan Whitelaw, CPA, as the court's expert to determine the issues involving income, as it related to child support. This order was incorporated into the order and judgment on incidental matters rendered on October 9, 2019, and signed on October 18, 2019. Mrs. Standridge asserts that additional motions were filed in an attempt to have a hearing on past due child support. The oldest of the five children turned 18 on December 21, 2019. In January 2020, Mr. Bordelon's child support obligation was reduced to $2,545.00 by Judge Waddell in open court.[7]

On May 7, 2020, Mr. Bordelon filed an "Emergency Rule for Temporary Suspension or Reduction of Child support Pending Report from Court Appointed Expert." Attached to this pleading was a copy of a "Notice of Bankruptcy Case Filing" made by Mr. Bordelon's bankruptcy counsel on April 30, 2020. On May 25, 2020, the trial court requested that Mrs.

---

[7] Apparently this oral ruling was never reduced to writing until the trial court's *July 14, 2022, Judgment*.

4

Whitelaw supplement her report with a determination of the parties' incomes for the years 2020 and 2021. The first report was supplied to the trial court on September 11, 2021, and the supplemental report was provided to the trial court on August 31, 2021.

Mr. Bordelon's "Motion to Reduce Child Support" was heard by the trial court on April 18, 2022. On June 29, 2022, the trial court issued a written ruling denying Mr. Bordelon's May 17, 2017, "Motion to Reduce Child Support" based on its finding that he failed to meet his burden of establishing a material change in circumstances to warrant modification of his support obligation. The court therefore ordered that Mr. Bordelon's monthly child support obligation would remain $2,545.00. A judgment was rendered and signed in accordance therewith on July 14, 2022. This is the first judgment from which Mr. Bordelon has appealed.

In the ***July 14, 2022, Judgment***, the trial court:

(1) denied and dismissed Mr. Bordelon's demands seeking a reduction of previous child support judgments rendered in these proceedings, based specifically upon its finding that he had failed to establish a material change in circumstances warranting a modification of his child support obligation;[8]

(2) found, based upon Judge Waddell's oral ruling of January 8, 2020, that Mr. Bordelon's monthly child support judgment was set at $2,545.00 per month retroactive to January 8, 2020;

(3) dismissed with prejudice the "Emergency Remaining Rule for Temporary Suspension or Reduction of Child Support Pending Report from Court Approved Expert" filed on May 7, 2020, by Mr. Bordelon;

(4) found, based on the length of time required to resolve this

---

[8] The issue being decided was whether Mr. Bordelon's 2016 change in employment constituted a material change in circumstances warranting a downward modification of his support obligation.

5

matter, that Mr. Bordelon would not be held in contempt of court for his failure to pay his monthly child support obligation up to the date of the trial court's written opinion of June 29, 2022; and

(5) all remaining provisions of the September 29, 2015, consent judgment were to remain in full force and effect.

On July 19, 2022, Mr. Bordelon filed a "Motion for New Trial and Alternatively a Rule to Reduce Child Support Based on a Material Change of Circumstances." On August 22, 2022, Mrs. Standridge filed a motion to reset hearing on rule to show cause seeking a hearing on her rule seeking past due child support originally filed on September 24, 2019. She alleged that, to date, her rule seeking past due child support has not been heard.

A hearing was held on the "Motion for New Trial" on September 8, 2022. The trial court's written ruling denying the "Motion for New Trial" was rendered, signed, and filed on October 6, 2022 ("***October 6, 2022, Ruling***"). The trial court specifically stated therein, "To summarize, Mr. Bordelon did <u>not</u> prove a material change of circumstances between 2015 and 2017 to justify a reduction in his child support, so this constitutes a final ruling on the Motion for New Trial." Because of the pending "Emergency Rule to Suspend or Reduce Child Support," and the alternative "Rule to Reduce Child Support" included in Mr. Bordelon's "Motion for New Trial," the trial court ordered an additional hearing "to determine if a material change of circumstances occurred limited to an alleged reduction in income of Mr. Bordelon from May 7, 2020, through December 31, 2020, 2021, and 2022; whether additional time with the children in 2019, 2020, 2021, and 2022 constitutes a change of circumstances warranting a deviation in a Worksheet A child support calculation; whether two children reaching the age of majority is a sufficient change in circumstances; and what benefit Ms.

6

Standridge receives from expense sharing with her current husband and whether that impacts a Worksheet A calculation."

The parties were told to supplement their income information from May 2021 through 2022 and submit proposed child support worksheets for the period May 7, 2020, through December 31, 2020, and the years 2021 and 2022, so a hearing could be conducted to set the amount of child support for the latter half of 2020, 2021, and 2022.[9] A decision on a rule for contempt filed by Mrs. Standridge would be heard at the same time as the **rules** (the "Emergency Rule for Suspension or Reduction of Child Support" filed on May 7, 2020, and the alternative "Rule to Reduce Child Support Based on a Material Change of Circumstances" filed as part of the "Motion for New Trial" on July 19, 2022) to reduce child support.

A hearing was scheduled for June 21, 2022; on that date, the parties submitted their proposed worksheets and exhibits to the trial court in chambers. As it did in its previous determination in connection with the **June 29, 2022, Opinion** and **July 14, 2022, Judgment**, the trial court included income Mr. Bordelon received from his parents (which the trial court concluded were not loans), income he received from IRA withdrawals, and government funds received in connection with pandemic relief.

The trial court relied in part on Mrs. Whitelaw's opinion regarding whether either party derived any benefit from expense sharing with their spouse. The trial court found that while Mr. Bordelon did not derive any benefit from expense sharing with his spouse, Mrs. Standridge, who was at

_____

[9] As noted *supra*, the trial court had Mrs. Whitelaw prepare a supplement to her report with a determination of the parties' incomes for the years 2020 and 2021.

the time unemployed, did in fact benefit from expense sharing with her husband.  Next, the trial court found that because Mr. Bordelon did not have physical custody of the children 50% of the time, the appropriate child support worksheet to use was Worksheet A, not B.

The trial court's written ruling was rendered and signed on August 15, 2023, and filed on August 17, 2023 ("***August 15, 2023, Ruling***"), and judgment in accordance was rendered, signed, and filed on October 23, 2023 ("***October 23, 2023, Judgment***"), granting the relief sought by Mr. Bordelon in his rules to reduce child support and modifying the September 15, 2015, child support judgment as orally modified by Judge Waddell as follows.  Mr. Bordelon was ordered to pay to Mrs. Standridge, in bi-monthly payments, one-half on or before the 1st and one-half on or before the 15th of each month:

(1) from June 1, 2020-December 31, 2020
$1,202.66 per month for four (4) minor children

(2) from January 1, 2021-May 31, 2021
$2,043.00 per month for four (4) minor children

(3) from June 1, 2021-December 31, 2021
$1,827.16 per month for three (3) minor children

(4) from January 1, 2022-December 31, 2022
$1,064.95 per month for three (3) minor children

(5) from January 1, 2023-May 31, 2023
$1,076.05 per month for three (3) minor children

(6) from June 1, 2023-December 31, 2023, and thereafter
$853.43 per month for two (2) minor children

Mrs. Standridge was ordered to provide health/medical insurance coverage for the minor children as long as insurance coverage was available through her spouse's employer.  Mrs. Standridge and Mr. Bordelon were each ordered to pay 50% of all medical and health care related expenses,

including deductibles, co-pays, and amounts not covered by insurance, by and/or on behalf of the minor children.

Mr. Bordelon was ordered to continue paying, as part of his child support obligation, 100% of the minor children's private school tuition and costs to attend "said schools." The parties were ordered to split 50/50 the costs of all "agreed upon" extracurricular activities of the minor children, and to each pay 50% of the minor children's uniform costs and school fees excluding tuition. Mrs. Standridge was given the right to claim the children of the marriage as dependents/exemptions for federal and state income taxes exclusively "each and every year" beginning with the tax year 2023 and continuing thereafter.

Finally, the trial court provided that, unless specifically modified therein, all prior orders of the court were to remain in full force and effect. It is from the ***July 14, 2022, Judgment*** and ***October 23, 2033, Judgment*** that Mr. Bordelon has appealed.

### PLAINTIFF BART TIMOTHY BORDELON'S ARGUMENT

***Assignment of Error No. 1:*** **The trial court erred in finding that the loss of Mr. Bordelon's only source of income, an annual salary of $160,000.00, did not constitute a material change in circumstances for the calculation of child support obligation purposes when he filed his "Rule to Reduce Child Support" on May 17, 2017. Additionally, the trial court erred by considering IRA withdrawals and money received from his parents after the relevant time period (September 2015-May 2017) in determining that there was no change in circumstances.**

***Assignment of Error Nos. 2, 3, and 4:*** **The trial court erred by including Mr. Bordelon's IRA withdrawals as income in considering "material change in circumstances" and calculating child support. The trial court erred by attributing money received from Mr. Bordelon's parents for the support and education of their grandchildren as income in considering material change in circumstances and in calculating his child support obligation.**

According to Mr. Bordelon, the trial court erred in failing to find that there was a change in circumstances between September 29, 2015, when his income was set at $11,500.00 per month, and May 17, 2017, the date he filed the "Rule to Reduce Child Support." Mr. Bordelon notes that he lost his $160,000.00 annual salary with Magcon in November 2016 when it ceased operations. He concedes that he did not file a rule to reduce his support obligation at that time. After losing his job, the only way he had to pay his child support was by tapping into an IRA with a value of approximately $150,000.00 and with gifts from his parents. Mr. Bordelon urges that his loss of employment *was* a material change in his ability to pay. Mr. Bordelon contends that the IRA proceeds should not be considered as to whether there was a material change of circumstances because he did not make a withdrawal until three months after he filed his motion to reduce child support and Mrs. Standridge filed a rule for contempt against him.

Mr. Bordelon points out that:

(1)     These withdrawals were made AFTER he filed his motion to reduce child support;

(2)     These withdrawals were required because he was paying nearly half of his gross income in child support, tuition and medical expenses and had two rules for contempt filed against him;

(3)     The contributions he made to the IRA were used in calculating his income when it was originally set and therefore, he would be paying child support twice on that income; and

(4)     The withdrawals were used to benefit the children and to help provide for them.

Mr. Bordelon stresses that while La. R.S. 9:315(C)(4)(a) includes pensions, it does not include IRA early withdrawals, savings account withdrawals, or loans as income. Pensions are considered as income for

these purposes, because they are ***regular*** monthly payments received in lieu of salary. IRA withdrawals are more in line with withdrawals from savings accounts, but with a penalty, or equity in a home. If his child support had been modified in 2017 when he filed his motion to modify, urges Mr. Bordelon, he would not have had to cash in the IRAs or borrow the money from his parents because he would not have been paying $5,100.00 per month in support and tuition.

Mr. Bordelon also contends that loans obtained from parents to support one's children are not considered as income. Mr. Bordelon reiterates that, had the relief he sought in May of 2017 been provided (a reduction in his child support obligation), he would not have had to receive money from his parents thereafter. Mr. Bordelon asserts that he did not have the ability or the means to pay the court-ordered support, private school tuition, and medical expenses without financial assistance from his parents.

Mr. Bordelon cites *Anderson v. Anderson*, 11-864 (La. App. 5 Cir. 5/31/12), 96 So. 3d 1278, wherein the Fifth Circuit found that gifts or loans provided to a party for the benefit of the children are not to be used in calculating income for child support purposes.

Per the Court in *Anderson*:

> La. R.S. 9:315(C)(3)(d)(iv) provides that a party's gross income for the purposes of calculating child support does not include monetary gifts to the party when the objective of the gift is to supplement irregular child support payments. Thus, we find the trial court did not err in failing to include these loan amounts as income for Ms. Anderson.

*Anderson*, 11-864, p. 7, 96 So. 3d at 1282.

Mr. Bordelon argues that there should be no distinction between the person paying or receiving the child support when the purpose of the loans

or gifts from grandparents is to support the children. In *Anderson*, the mother-obligee, Ms. Anderson, was not receiving child support from the father-obligor and needed the loans and gifts to support the children from the marriage. In this case, urges Mr. Bordelon, although he is the father-obligor, he did not have the money and resources to pay what he was ordered to pay for the support of the children of his marriage to the mother-obligee, Mrs. Standridge.

Mrs. Standridge urges this Court to affirm the finding of the trial court that there was no material change in the circumstances of Mr. Bordelon to warrant a downward adjustment to his child support obligation.

Mrs. Standridge next points out that Mr. Bordelon was unclear regarding the dates that he "had to make early withdrawals from his IRA account." This, argues Mrs. Standridge, is a critical factor. The record shows that Mr. Bordelon made substantial withdrawals from his IRA account ***prior*** to filing his ***first*** rule for reduction of child support, the one that led to the consent judgment dated September 29, 2015. She specifically calls to the Court's attention that he withdrew $110,000.00 from his IRA account during 2015. The record also shows that Mr. Bordelon ***voluntarily quit*** his job with Magee Resources, which had provided him with a considerable income, necessitating his need to take further withdrawals from his IRA. A voluntary change in circumstances, such as Mr. Bordelon's choice to quit a high-paying job, generally does not justify a reduction in one's support obligation.

Mrs. Standridge urges that, despite Mr. Bordelon's interpretation of La. R.S. 9:315(C)(3)(a), "gross income" includes "the income ***from any source, including but not limited to*** . . . ***pensions*** . . . ," which does not limit

12

inclusion in "gross income" to only pensions that are payable without early withdrawal penalties. She then contends that Mr. Bordelon's statement in his brief that his IRA withdrawals were made **after** he filed his motion to reduce his child support obligation in September 2017 is "absolutely untrue." Specifically, his tax returns prove this statement to be untrue: in 2015, Mr. Bordelon's withdrawals totaled $110,000.00; in 2016, the withdrawals were $20,000.00; and during 2017, the withdrawals were $30,000.00.

Therefore, the trial court did not err in including Mr. Bordelon's IRA withdrawals in calculating his income for purposes of setting his child support obligation.

Likewise, Mrs. Standridge urges that there is no merit to Mr. Bordelon's argument that the trial court erred in considering gifts from his parents as "gross income" for purposes of calculating his child support obligation. First, Mr. Bordelon, an only child, asked for and received "substantial" amounts of money from his parents "since at least 2015." Per his own statement, he never made any meaningful attempt to repay them. When he filed for bankruptcy, he listed his parents as creditors and discharged his obligation to them. Recurring monetary gifts are gross income to be included in the calculation of child support, argues Mrs. Standridge. The trial court did not err in including these gifts as gross income in this case.

The trial court is given great discretion in either granting or modifying child support awards and its decision will not be set aside or amended on appeal absent a clear abuse of that discretion. *McGatlin v. Salter*, 51,892 (La. App. 2 Cir. 2/28/18), 246 So. 3d 750; *Armstrong v. Rayford*, 39,653 (La.

13

App. 2 Cir. 5/11/05), 902 So. 2d 1214. Furthermore, the trial court has wide discretion in determining the credibility of witnesses; its conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. *McGatlin, supra*; *Curtis v. Curtis*, 34,317 (La. App. 2 Cir. 11/1/00), 773 So. 2d 185. The trial court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. *Havener v. Havener*, 29,785 (La. App. 2 Cir. 8/20/97), 700 So. 2d 533.

La. C.C. art. 141 provides in part that in a proceeding for divorce or thereafter, the court may order either or both of the parents to provide support for a child based on the needs of the child and the ability of the parents to provide support. La. C.C. art. 142 provides that an award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated when it is no longer necessary.

The duty of child support is a joint duty shared by both parents, in accordance with their resources. La. R.S. 9:315(A). The mutual financial responsibility for their children gives rise to an obligation that must be administered and fairly apportioned between parents. *Dugué v. Dugué*, 20-292 (La. App. 5 Cir. 3/24/21), 316 So. 3d 170, 173; *State, Dep't of Social Services ex rel. A.D. v. Gloster*, 10-1091 (La. App. 5 Cir. 6/29/11), 71 So. 3d 1100, 1102 *citing State, Dept. of Social Services ex rel. P.B. v. Reed*, 10-410 (La. App. 5 Cir. 10/26/10), 52 So. 3d 145, 147, *writ denied*, 10-2611 (La. 2/18/11), 57 So. 3d 333. A child support award is based on the total net income earned by the parents and the needs of the child, with the goal to find an appropriate level of support so the child can receive the same share of

14

parental income that the child would have received if the parents were living together. *Guillot v. Munn*, 99-2132 (La. 3/24/00), 756 So. 2d 290.

The starting point for the determination of the basic child support obligation of parents is the "gross income" of each. La. R.S. 9:315.20. "Gross income" includes income from any source, expense reimbursements, or in-kind payments, as well as net self-employment income. La. R.S. 9:315(C)(3)(a)-(c). More specifically, La. R.S. 9:315(C)(3)(a) provides that "gross income" means:

> The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers' compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation[.]

If a parent is voluntarily unemployed or underemployed, potential income is included as gross income. La. R.S. 9:315(C)(5)(b). The court then combines the parties' adjusted gross incomes, which is then used to calculate each parent's proportionate share of the combined amount. La. R.S. 9:315.2(C). The basic child support obligation is determined from the schedule listed in La. R.S. 9:315.19 by using the combined adjusted gross income of the parties and the number of children involved in the proceeding.

The total child support obligation is determined by adding together the basic child support obligation, net child care costs, the cost of health insurance premiums, extraordinary medical expenses, and other extraordinary expenses. La. R.S. 9:315.8(A). Then, each party's share of the total child support obligation is determined by multiplying his or her

percentage share of combined adjusted gross income times the total child support obligation. La. R.S. 9:315.8(C). The party without legal custody or the nondomiciliary party shall owe his or her total child support obligation as a money judgment of child support to the custodial or domiciliary party, less any court-ordered direct payments on behalf of the child for net child care costs, health insurance premiums, extraordinary medical expenses, and other extraordinary expenses. La. R.S. 9:315.8(D).

Recurring monetary gifts have been considered as income for purposes of calculation of child support. However, in the reported cases, the party receiving these gifts has been the payee, not the payor spouse. See, *Barlow v. Barlow*, 11-1286, p. 15 (La. App. 3 Cir. 4/11/12), 87 So. 3d 386, 395 (contributions by the mother's family and friends when she needed assistance did not qualify as recurring monetary evidence with the only testimony being that of the father); and, *Frederick v. Buckingham*, 44,458, p. 5 (La. App. 2 Cir. 6/24/09), 15 So. 3d 1223, 1226 (payment of college expenses and the gift of a car by a mother's grandmother and aunt were not considered as income as they were provided to her immediately upon the birth of her child). In fact, "[a]ny monetary gift to the domiciliary party when the objective of the gift is to supplement irregular child support payments from the nondomiciliary party" should not be considered as income to the domiciliary parent. *Anderson*, 11-864, p. 8, 96 So. 3d at 1282-83.

To the extent that a party's direct expenses are reduced due to sharing expenses with a third party, such as the family and friends or a subsequent spouse of a parent, the reduction in actual expenses may be included as income. La. R.S. 9:315(C)(5)(c); *Harrington v. Harrington*, 43,373 (La.

16

App. 2 Cir. 8/13/08), 989 So. 2d 838; *Gould v. Gould*, 28,996, p. 14 (La. App. 2 Cir. 1/24/97), 687 So. 2d 685, 693. Because the language of the statute providing that the court may consider as income the benefits a party derives from expense sharing with another is permissive, not mandatory, it is within the discretion of the trial court to include or disallow such alleged "benefits." *Semmes v. Semmes*, 45,006 (La. App. 2 Cir. 12/16/09), 27 So. 3d 1024; *Evans v. Evans*, 36,731 (La. App. 2 Cir. 11/6/02), 830 So. 2d 591.

Courts are also given the authority to examine the standard of living and assets of the obligor parent both prior and subsequent to the child support order to determine the actual income of the obligor if the amount claimed as income is inconsistent with the obligor's lifestyle. La. R.S. 9:315.1.1(A)(3); *Brossett v. Brossett*, 49,883 (La. App. 2 Cir. 6/24/15), 195 So. 3d 471; *Sawyer v. Sawyer*, 35,583, pp. 7-8 (La. App. 2 Cir. 11/2/01), 799 So. 2d 1226, 1232, *writ not considered*, 01-3189 (La. 2/8/02), 808 So. 2d 349; *McClanahan v. McClanahan*, 14-670, p. 8 (La. App. 5 Cir. 3/25/15), 169 So. 3d 587, 593*, writ denied*, 04-1175 (La. 9/3/04), 882 So. 2d 609; *McCorvey v. McCorvey*, 05-889, p. 2 (La. App. 3 Cir. 2/1/06), 922 So. 2d 694, 702, *writ denied*, 06-435 (La. 4/28/06), 927 So. 2d 295; *Verges v. Verges*, 01-0208 (La. App. 1 Cir. 3/28/02), 815 So. 2d 356, *writ denied*, 02-1528 (La. 9/20/02), 825 So. 2d 1179.

Documentary evidence of income is critical to the setting of any child support order, even interim and temporary orders. While La. R.S. 9:315.2(A) requires that each party provide to the court and the other party a verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings (pay stubs, federal tax returns, etc.), other documents necessary for a court to properly

17

determine income of the parties can also be considered. If a party's statements provide an inaccurate picture of that person's income, the trial court can consider income potential rather than actual income. Courts permit parties to stipulate to either party's income or that all documentation available to determine income is before the court. *Landry v. Landry*, 97-1839, pp. 3-4 (La. App. 4 Cir. 11/25/98), 724 So. 2d 271, 272-73.

Child support awards are never final; they are subject to modification as the needs of the children or the ability of the parents to pay change. La. C.C. art. 142. La. R.S. 9:311(A)(1) provides that an award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award. The material change in circumstances must be substantial and continuing since the last award for support. A judgment for past due support shall not of itself constitute a material change in circumstances of the obligor sufficient to reduce an existing order of support. La. R.S. 9:311(B). "Material" is defined as a change in circumstance having real importance or great consequences for the needs of the child or the ability to pay of either party. Comment (a), La. R.S. 9:311.

Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in circumstances results from fortuitous events or other circumstances beyond a person's control, such as loss of one's position or illness. A voluntary change in circumstances generally does not justify a reduction in the support obligation. *Strange v. Strange*, 42,318 (La. App. 2 Cir. 6/20/07), 960 So. 2d 1223; *Wyatt v. Wyatt*, 39,518 (La. App. 2 Cir. 4/6/05), 899 So. 2d 788. The

18

trial court has wide discretion in resolving credibility issues, and whether the obligor parent is in good faith in reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the trial court's wide discretion. *Id.*

### *July 14, 2022, Judgment*

As noted above, on June 29, 2022, the trial court issued its written opinion denying Mr. Bordelon's "Motion to Reduce Child Support" filed on May 17, 2017, based upon its finding that he failed to meet his burden of establishing a material change in circumstances warranting such a modification. The following is excerpted from the trial court's "***June 29, 2022, Opinion***":

> The threshold issue before the Court is whether Mr. Bordelon's 2016 change in employment constitutes a material change in circumstances warranting a downward modification of his support obligation. . . .
>
> To determine whether Mr. Bordelon's 2016 employment change constitutes a material change in circumstances, the Court must evaluate whether that change had real importance or great consequences for Mr. Bordelon's ability to pay. The Court's evaluation of those consequences necessitates comparing Mr. Bordelon's gross income before his employment change to his gross income after his employment change. In the 2015 consent judgment, Mr. Bordelon stipulated to a monthly income of $11,500. Mr. Bordelon alleges his change in employment reduced his monthly income to $7,177, a decrease of approximately 38%. Mr. Bordelon's valuation of his income is based solely on monies earned through Socman Group, his personally owned recruitment firm. However, from 2017 to 2021, Mr. Bordelon also received substantial sums of money from his parents through direct deposits and payments made by them on his behalf. During that timeframe, Mr. Bordelon also made significant early withdrawals from his IRA. . . .
>
> [A]ny modification of Mr. Bordelon's support obligation must be based on a change of circumstances that took place between the time of the previous award (September 29, 2015) and the time of the rule for modification of the award (May 17, 2017) [in accordance with La. R.S. 9:311(A)(1)]. Mr. Bordelon's Rule to Modify Support is largely based on a change in his

employment which took place in 2016, within the relevant time frame. However, Mr. Bordelon interprets La. R.S. 9:311(A)(1) as also restricting the Court's analysis of his financial statistics to that period. The Court disagrees. A modification of support must be based on a change of circumstance occurring during the relevant time frame, but La. R.S. 9:311 *does not limit the scope of admissible evidence* to evaluate whether such a change in circumstances was material. . . .

The date of filing of the rule for modification does not represent a cutoff point beyond which the Court may no longer examine Mr. Bordelon's finances to evaluate the consequences of his employment change for his ability to pay. The statute is not an evidentiary rule and the Court will not treat it as one. Consequently, the Court will consider evidence of Mr. Bordelon's finances after the date of the filing of the rule to modify in its analysis of whether his change in circumstances was material. . . .

Mr. Bordelon's first argument to exclude the funds provided to him by his parents from his income calculation centers on La. R.S. 9:315(C)(3)(d)(iv). Mr. Bordelon takes the position that recurring monetary gifts from his parents should not be considered part of his income because they were made to aid him in meeting his support obligation. . . . [La. R.S. 9:315(C)(3)(d)(iv)] specifically contemplates the exclusion of recurring monetary gifts made to the *domiciliary party* from that party's income when those gifts were made to alleviate the burden of a nondomiciliary party failing to meet their support obligation. In the present case, Mr. Bordelon is not the domiciliary party. Therefore, on its face, Louisiana Revised Statute 9:315(C)(3)(d)(iv) does not apply to any monetary gift made to Mr. Bordelon. . . .

Second, Mr. Bordelon asserts his parents loaned him these funds and they should be deducted from his income on that basis. . . . Mr. Bordelon provided no corroborating evidence from his parents indicating they provided the funds to him under a promise of repayment. The only evidence offered by Mr. Bordelon in support of his assertion is his own self-serving testimony. . . . Mr. Bordelon testified he has not repaid his parents for the amounts he has received from them. . . .

Susan Whitelaw's expert report shows that "Mr. Bordelon's parents did, on a regular basis, make payments on his credit cards, provide checks that he deposited to his personal account, make payments directly . . . for the children's tuition, and make payments directly to attorneys on behalf of Mr. Bordelon." Ms. Whitelaw's supplemental report was limited in scope from 2017 to May of 2021. However, Mr. Bordelon testified his parents have consistently provided him with financial assistance since

at least 2014.  Over the span of approximately eight years, there is no indication Mr. Bordelon's parents made any attempt to collect on his alleged debt.  Even if Mr. Bordelon's parents began providing him with financial assistance under an expectation of repayment, these circumstances are indicative of a remission of all or part of the debt at some uncertain time.  The regularity of these transactions, combined with their apparent gratuity, weigh strongly in favor of including these funds in Mr. Bordelon's income as recurring monetary gifts.

The Court concludes the funds Mr. Bordelon received from his parents are not excluded from his gross income under La. R.S. 9:315(C)(3)(d)(iv). The statute unambiguously applies only to monetary gifts made to domiciliary parties and Mr. Bordelon is the nondomiciliary party.  Further, the court finds Mr. Bordelon's testimony that his parents loaned the money to him is not credible.  Mr. Bordelon's parents regularly provided him with significant sums of money, took no action to collect any amount in repayment from him, and did not corroborate his loan classification in this case. . . . As a result, the Court will include the entire amount received by Mr. Bordelon from his parents, as estimated in Susan Whitelaw's supplemental report, in its calculation of his gross income.

Louisiana Revised Statute 9:315 also includes "pensions" in a party's gross income for purposes of calculating their support obligation.  In the present case, Mr. Bordelon took out early withdrawals from his IRA of $30,000 in 2017, $60,000 in 2018, and $10,000 in 2020.  In support of their relative positions as to the proper classification of these withdrawals, both parties cite to the Third Circuit's opinion in *Robichaux v. Robichaux*, 04-162, p. 1 (La. App. 3 Cir. 6/2/04), 879 So. 2d 279.  In *Robichaux*, the trial court included an IRA distribution of $11,000 as part of Mr. Robichaux's gross income for 2001.  *Id.* at 283.  The court also included $14,055 of cashed-in pensions and annuities as part of his gross income for 2002.  *Id.*  The Third Circuit upheld the trial court's calculation of Mr. Robichaux's income in those respects.  *Id.* at 285.

Mr. Bordelon argues *Robichaux* is distinguishable from the present case because Mr. Robichaux used his IRA distribution to aid him in meeting his living expenses, while Mr. Bordelon withdrew from his IRA to aid him in meeting his support obligation.  However, Mr. Bordelon cites to no authority directly in support of the contention that the *purpose* for which an individual draws on a pension plan is pertinent to its income classification under La. R.S. 9:315.  Although not determinative in its analysis, the Court also notes the IRA withdrawals represent taxable income, were reported as income on Mr. Bordelon's returns, and Susan Whitelaw's expert report includes the IRA withdrawals as part of Mr. Bordelon's gross

income. Simply stated, there is nothing before the Court indicating Mr. Bordelon's early withdrawals from his IRA should not be included as part of his gross income. Therefore, the Court will include Mr. Bordelon's IRA withdrawals in its calculation of his present gross income.

Based on the totality of the evidence, this Court finds Mr. Bordelon has failed to meet his burden of establishing a material change in circumstances warranting modification of his child support obligation. Mr. Bordelon's support obligation is to remain set at $2,545.00 per month, in accordance with Judge Waddell's oral ruling of January 2020. The remaining provisions of the September 29, 2015, consent judgment shall remain in full force and effect.

As noted previously, a judgment in accordance with the trial court's *June 29, 2022, Opinion* was rendered, read, signed, and filed on July 14, 2022 (the *July 14, 2022, Judgment*). Mr. Bordelon's multi-purpose pleading, entitled "Motion for New Trial and Alternatively a Rule to Reduce Child Support Based on Material Change of Circumstances," was filed on July 19, 2022. Mr. Bordelon's arguments in support of his Motion for New Trial were that: (1) the trial court's *June 29, 2022, Opinion* was "clearly contrary to the law and evidence and would result in a total miscarriage of justice" pursuant to La. C.C.P. art. 1972(1); (2) the inclusion of Mr. Bordelon's IRA withdrawals and monies from his parents as income was erroneous; (3) Mr. Bordelon suffered a reduction in his income in 2020, which he contends constitutes a material change of circumstances; (4) a 2019 judgment that increased Mr. Bordelon's time with the children, and this increase constitutes a material change of circumstances; (5) two of the five children have reached the age of majority, and Mr. Bordelon contends that this constitutes a material change of circumstances; and (6) the trial court erred in not allowing Mr. Bordelon to present evidence in support of his May

22

7, 2020, Emergency Rule for Temporary Suspension or Reduction of Child

Support pending the receipt of Mrs. Whitelaw's expert report.[10]

The following is excerpted from the trial court's "Ruling on Motion

for New Trial":

> At the outset, it should be noted that the primary reason why Mr. Bordelon's request for a new trial fails is because of his misclassification of the relevant time period in this case. As stated in the Court's ***June 29, 2022, Opinion***, the modification of child support requires a "material change" to have occurred between the parties. Importantly, the relevant time period for which to examine this "material change" is between September 29, 2015 (the date of the [previous child support] judgment) and May 25, 2017 (the date the State filed the Rule to Reduce Child Support on behalf of Mr. Bordelon). Any such change that occurred outside of this time line is probative of his ability to pay the judgment, but it does not constitute the *actual material change* warranting a modification of the judgment. . . .
>
> Mr. Bordelon contends that he has endured a material change in circumstances "through no fault of his own" when he quit his job at Magcon in October of 2016, resulting in a loss of his $160,000 salary. Yet, purposefully leaving one's job can hardly be classified as an occurrence that was "no fault of his own." Mr. Bordelon argues that his decision was based on the desire to remain close to his children in Louisiana, as opposed to a relocation to California. The decision to start a new company is fraught with uncertainty and instability and cannot "clearly" be viewed as a decision made in the best interest of the children.
>
> Next, Mr. Bordelon contends that the Court erred by including his IRA withdrawals and the monies paid by his parents as income. Beginning with the IRA matter, Mr. Bordelon attempts to distinguish his own case from *Robichaux*, based on the fact that his own withdrawals were for purposes of fulfilling the child support obligation. However, as noted in the ***June 29, 2022, Opinion***, there has been no law on point presented which states that the purpose for which an individual draws from a pension plan is pertinent to its income classification under La. R.S. 9:315.

---

[10] The trial court properly considered in its ruling on Mr. Bordelon's "Motion for New Trial" only those arguments that actually pertained to the issues that had been decided in the trial court's ***July 14, 2022, Judgment***. As can be seen *infra*, the court's ***August 15, 2023, Ruling*** and ***October 23, 2023, Judgment*** addressed issues that were raised by Mr. Bordelon in his rules to reduce child support not addressed in the previous ruling and judgment (i.e., Arguments (3) – (6) set forth above).

Regarding the inclusion of the monies paid by his parents, Mr. Bordelon improperly relies on La. R.S. 9:315(C)(3)(d)(iv), as this statute refers specifically to the domiciliary parent—a title by which Mr. Bordelon has never been designated. Furthermore, without substantiating evidence to suggest that these recurring gifts were intended to be treated as loans, the Court will not assume repayment by Mr. Bordelon to his parents is/was forthcoming. In light of the Court's reasoning, based on statutes and jurisprudence, Mr. Bordelon has not established that the inclusion of the IRA withdrawals and the monies paid by his parents is "clearly contrary to the law and evidence."

The trial court has wide discretion in resolving factual issues. It is within the trial court's discretion to decide what amount is appropriate for inclusion in gross income, and the trial court's credibility determinations regarding a party's sources of income are entitled to great weight. *McGatlin*, *supra*; *Brossett v. Brossett*, *supra*.

Louisiana jurisprudence distinguishes between voluntary and involuntary changes in circumstances. An involuntary change in circumstances results from fortuitous events or other circumstances beyond a person's control, such as loss of one's position or illness. A voluntary change in circumstances generally does not justify a reduction in the support obligation. Voluntary underemployment is a question of good faith. *State in the Interest of Harper v. Harper*, 53,485 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1163; *Kairdolf v. Kairdolf*, 46,035 (La. App. 2 Cir. 3/2/11), 58 So. 3d 527. Whether a child support obligor is in good faith in reducing his or her income is a factual determination which will not be disturbed on appeal absent an abuse of the trial court's wide discretion. *State v. Johnson*, 54,945 (La. App. 2 Cir. 3/1/23), 358 So. 3d 210; *Fuqua v. Fuqua*, 45,555 (La. App. 2 Cir. 9/22/10), 47 So. 3d 1121. The court's credibility determinations

regarding a party's sources of income are entitled to great weight. *State v. Johnson*, *supra*; *Armstrong*, *supra*.

The trial court made its factual determinations based on the applicable legal principles as well as the stipulations of the parties, which included the expert report of Mrs. Whitelaw. This Court finds no abuse of the trial court's determinations that Mr. Bordelon's decision to leave his employment with Magcon in 2016 was not a material change in circumstances, and that both his IRA withdrawals and recurring gifts from his parents were to be considered as income for purposes of calculation of his child support obligation.

### October 23, 2023, Judgment

Because of the pending "Emergency Rule to Suspend or Reduce Child Support," and the alternative "Rule to Reduce Child Support" included in Mr. Bordelon's "Motion for New Trial," the trial court ordered an additional hearing "to determine if a material change of circumstances occurred limited to an alleged reduction in income of Mr. Bordelon from May 7, 2020, through December 31, 2020, 2021, and 2022; whether additional time with the children in 2019, 2020, 2021, and 2022 constitutes a change of circumstances warranting a deviation in a Worksheet A child support calculation; whether two children reaching the age of majority is a sufficient change in circumstances; and what benefit Ms. Standridge receives from expense sharing with her current husband and whether that impacts a Worksheet A calculation."

The parties were told to supplement their income information from May 2021 through 2022 and submit proposed child support worksheets for the period May 7, 2020, through December 31, 2020, and the years 2021 and

2022, so a hearing could be conducted to set the amount of child support for the latter half of 2020, 2021, and 2022.[11] A decision on a rule for contempt filed by Mrs. Standridge would be heard at the same time as the **rules** (the "Emergency Rule for Suspension or Reduction of Child Support" filed on May 7, 2020, and the alternative "Rule to Reduce Child Support Based on a Material Change of Circumstances" filed as part of the "Motion for New Trial" on July 19, 2022") to reduce child support.

A hearing was scheduled for June 21, 2023; however, on that date, the parties submitted their proposed worksheets and exhibits to the trial court in chambers. As it did in its previous determination in connection with the **June 29, 2022, Opinion** and **July 14, 2022, Judgment**, the trial court included income Mr. Bordelon received from his parents (which the trial court concluded were not loans), income he received from IRA withdrawals, and government funds received in connection with pandemic relief.

The trial court relied in part on Mrs. Whitelaw's opinion regarding whether either party derived any benefit from expense sharing with their spouse. The trial court found that while Mr. Bordelon did not derive any benefit from expense sharing with his spouse, Mrs. Standridge, who was at the time unemployed, did in fact benefit from expense sharing with her husband. Next, the trial court found that because Mr. Bordelon did not have physical custody of the children 50% of the time, the appropriate child support worksheet to use was Worksheet A, not B.

---

[11] As noted *supra*, the trial court had Mrs. Whitelaw prepare a supplement to her report with a determination of the parties' incomes for the years 2020 and 2021.

The trial court's written ruling was rendered and signed on August 15, 2023, and filed on August 17, 2023 ("**August 15, 2023, Ruling**"), and judgment in accordance was rendered, signed, and filed on October 23, 2023 ("**October 23, 2023, Judgment**").

The trial court determined that it would again include as income monies received by Mr. Bordelon from his parents based upon its previous determination that they were not loans, as well as IRA withdrawals. For the reasons set forth previously, this Court does not find these determinations to constitute an abuse of discretion and will not disturb them. The trial court then found the following to be the parties' incomes for the years of 2020-2023, including an amount attributed per month to Mrs. Standridge for the income sharing benefit Mrs. Standridge received from her husband.

| Year | Mr. Bordelon | Mrs. Standridge | Mr. B's Child Support |
|------|-------------|-----------------|------------------------|
| 2020 | $7,787.00/mo. | $6,669.36/mo. | $1,202.66/mo. |
| 2021 | $10,368.00/mo. | $6,442.79/mo. | $2,043.00/mo.[12] $1,827.16/mo.[13] |
| 2022 | $7,292.61/mo. | $6,442.79/mo. | $1,064.95/mo. |
| 2023 | $6,000.00/mo. | $6,442.79/mo. | $1,076.05/mo.[14] $864.43/mo.[15] |

As stated by La. R.S. 9:311(A)(1), a support award shall not be modified unless the party seeking modification shows a material change in circumstances of one of the parties between the time of the previous award

---

[12] From January 1-May 31, 2021, for four minor children.

[13] From June 1-December 31, 2021, for three minor children.

[14] From January 1-May 31, 2023, for three minor children.

[15] From June 1-December 31, 2023, and thereafter for two minor children.

27

and the time of the rule for modification of the award.  The trial court took into consideration the circumstances under which the previous award was made ($2,545.00 per month, as originally ordered by Judge Waddell in his oral ruling of January 8, 2020, and continued in the ***July 14, 2022, Judgment***), weighed and compared past circumstances and present circumstances, and determined that modification was appropriate.  See, *Robertson v. Robertson*, 45,289 (La. App. 2 Cir. 5/26/10), 37 So. 3d 597, 602.  Specifically, as requested by Mr. Bordelon, the trial court took into account the fact that children had reached the age of majority and Mr. Bordelon's reduced income in setting his child support obligation going forward.  This determination, based on Mrs. Whitelaw's expert reports as well as information provided by the parties, is clearly supported by the record, as were the trial court's previous determinations and child support calculations.  These assignments of error are without merit.

***Assignment of Error No. 5*:  The trial court erred in choosing not to use Worksheet "B" in calculating the child support obligation after its July 2019 modification of the custodial periods of each parent.**

In his fifth assignment of error, Mr. Bordelon urges that the parties have had joint custody of the minor children since the 2010 divorce judgment and JCIP, and he has had the minor children more than he would in an "every other weekend" nondomiciliary parent situation.  In 2017, Mr. Bordelon sought a modification of the JCIP to provide for 50/50 custody.  In July 2019, the parties agreed to modify the JCIP, and Mr. Bordelon received additional days.[16]  According to Mr. Bordelon, for the five-year period of

---

[16] In addition to the traditional holidays, the children's school schedule has three one-week breaks (fall, winter, and spring).  In odd-numbered years, Mr. Bordelon has the children for two of those weeks, and Mrs. Standridge has them for one of the three weeks.  In even-numbered years, he has the children for one of the three weeks, and Mrs. Standridge has them for two of the three weeks.

2017-2021, on average, he had the children 44% of the time. Since the modification of the JCIP in 2019, he will have had the children an average of 46% of the time.

In the instant case, Mr. Bordelon argues that he and Mrs. Standridge have "shared custody" of the children. Therefore, Worksheet B should have been used by the trial court for the determination of his child support obligation from July 1, 2019, and thereafter. Alternatively, should this Court determine that the trial court did not err in finding that Worksheet B should not have been used after the modification of Custody in July 2019, then the trial court should have used the discretion provided by La. R.S. 9:315.8(E) and given him credit for time that he had/has with the children. According to Mr. Bordelon, the trial court abused its discretion by not granting a credit to him against his basic child support obligation since he clearly exceeded the 73 days of visitation a year.

Mrs. Standridge points out that, in accordance with the trial court's instructions, each party submitted calendars showing the time the children were in his or her physical possession. Each parent also prepared and submitted child support worksheets. Based upon the increase in physical custody Mr. Bordelon was awarded in July 2019, he then began to argue that he was entitled to calculate his child support obligation by using Worksheet B, not Worksheet A, because it significantly reduces his obligation.

Mrs. Standridge urges that the trial court did not abuse its vast discretion in rejecting Mr. Bordelon's argument on this issue and using Worksheet A. Mrs. Standridge urges this Court to affirm the trial court's

decision to utilize Worksheet A, as it is neither manifestly erroneous nor clearly wrong.

The Child Support Guidelines provide worksheets for calculating the total child support obligation. Worksheet A is used for sole, split, or joint custody that is not shared, and Worksheet B is used for joint, shared custody. La. R.S. 9:315.20. La. R.S. 9:315.8(E) provides that "joint custody" means a joint custody order that is not "shared custody" under La. R.S. 9:315.9.

"Shared custody" means each parent has physical custody of the child for an approximately equal amount of time. La. R.S. 9:315.9(A)(1). If there is a joint custody order or JCIP providing for shared custody or if the court finds by a preponderance of the evidence that shared custody exists, then the basic support obligation is multiplied by one and one-half to account for the increased expense in raising a child between two households sharing equal time. La. R.S. 9:315.9(A)(2). The basic child support obligation is then divided between the parents in proportion to their respective adjusted gross incomes, and each parent's child support obligation is cross-multiplied by the actual percentage of time the child spends with the other party to determine each party's share. La. R.S. 9:315.9(A)(3).[17] The parent who owes the greater amount of child support owes to the other parent the difference between the two amounts as a child support obligation. This amount shall not be higher than the amount the parent would have owed if he or she were a domiciliary parent. La. R.S. 9:315.9(A)(7). As noted above, Worksheet B (or a substantially similar form adopted by local court

---

[17] Each parent's proportion of any direct payments ordered to be made on behalf of the child for, *inter alia*, the cost of health insurance premiums, extraordinary medical expenses, and other extraordinary expenses is then deducted from the amount calculated under subsection (2) of La. R.S. 9:315.9(A). La. R.S. 9:315.9(A)(5).

rule) shall be used to calculate child support in a shared custody situation. La. R.S. 9:315.9(A)(8).

"Joint Custody" means a joint custody order that is not shared custody as defined in R.S. 9:315.9(A). Subsection (1) of La. R.S. 9:315.8(E) provides the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. Subsection (2) provides that if under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court *may* order a credit to the child support obligation. Subsection (3) provides for the determination of the amount of credit, if any, by the court, which shall consider the following: the amount of time the child spends with the person to whom the credit would be applied, which must include in its consideration the continuing expenses of the domiciliary party; the increase in the financial burden placed on the person to whom the credit would be applied and the decrease in the financial burden on the person receiving child support; and the best interests of the child and what is equitable between the parties.

There is no hard and fast rule to determine just how much, if any, to reduce the child support obligation based on the percentage of time the children live with either parent. *Calhoun v. Calhoun*, 52,915 (La. App. 2 Cir. 8/14/19), 316 So. 3d 1209, *writ denied*, 19-1484 (La. 11/12/19), 282 So. 3d 228; *Falterman v. Falterman*, 97-192, pp. 7-8 (La. App. 3 Cir. 10/8/97), *writ not considered*, 98-0076 (La. 3/13/98), 712 So. 2d 863, citing *In re Burkenstock*, 95-586, p. 4 (La. App. 5 Cir. 12/13/95), 666 So. 2d 1168, 1170. In determining whether to make an adjustment in the amount of child

support owed by a nondomiciliary parent for time spent with his children, the trial court is granted wide discretion. *Id.*

An automatic deviation from the child support guidelines is not allowed. *Semmes*, *supra*; *Jones v. Jones*, 38,790 (La. App. 2 Cir. 6/25/04), 877 So. 2d 1061. All that is required by La. R.S. 9:315.8(E) is that the trial court consider the period of time spent with the nondomiciliary parent as a basis for adjustment of the child support obligation. *Id.*; *Falterman*, *supra*. The statute does not mandate an adjustment for time spent, nor does it remove from the trial court the discretion to decide whether to make an adjustment. *Id*.

Likewise, a threshold percentage for application of the rules for shared custody has not been established by the courts. *See*, *Mendoza v. Mendoza*, 14-954, pp. 4-7 (La. App. 5 Cir. 5/14/15), 170 So. 3d 1119, 1122-23 (trial court used Worksheet A when father exercised 46% physical custody); *DeSoto v. DeSoto*, 04-1248, pp. 4-7 (La. App. 3 Cir. 2/2/05), 893 So. 2d 175, 178-80 (trial court used Worksheet A when father exercised 45% custody); *Broussard v. Rogers*, 10-593, p. 6 (La. App. 5 Cir. 1/11/11), 54 So. 2d 826, 830 (trial court used Worksheet B when father exercised 46% physical custody); *Janney v. Janney*, 05-0507, pp. 3-6 (La. App. 1 Cir. 7/26/06), 943 So. 2d 396, 398-400, *writ denied*, 05-0507 (La. 11/17/06), 942 So. 2d 546 (trial court used Worksheet B when father exercised 45.3% physical custody). Because shared custody requires only "an approximately equal amount of time," regardless of the order of custody, courts have the discretion to determine whether a custody arrangement constitutes shared custody. La. R.S. 9:315.9(A)(1); *see, Cole v. Cole*, 13-1442, p. 14 (La. App. 3 Cir. 6/4/14), 139 So. 3d 1225, 1233.

In *Mendoza*, the Fifth Circuit recognized that there was "no bright line as to what constitutes shared custody," and found that a trial court has great discretion, which will not usually be disturbed, regarding whether to apply Worksheet A or B when the parents have an "approximately equal amount of time." *Id.* In *State Dept. of Children and Family Services ex rel. J.C. v. Charles*, 11-1012, p. 6 (La. App. 5 Cir. 5/31/12), 102 So. 3d 179, 183, the appellate court noted that, in determining whether a particular custody arrangement is shared, La. R.S. 9:315.9 does not bind the trial court to a "threshold percentage" based only on the number of days. *Id.* citing *Broussard*, 10-593, p. 4, 54 So. 2d at 829.

The party urging a reduction in the child support obligation based on the amount of time spent with the child must bear the burden of proving that he or she exercises shared custody or extraordinary visitation with the child, that the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent, and, finally, that the application of the guidelines would not be in the best interest of the child or would be inequitable to the parties. *Guillot*, 99-2132, p. 1, 756 So. 2d at 992.

Having reviewed the pertinent jurisprudence on this issue, what is apparent to this Court is that appellate courts have rarely disturbed a trial court's decision as to whether a custody arrangement is "shared" and if so, whether the use of Worksheet B is warranted. The following is excerpted from the trial court's written opinion (***August 17, 2023, Ruling***) in the instant case:

> [T]he trial court rejects Mr. Bordelon's position that a
> Worksheet B calculation should be used or a deviation should
> be [made] by the Court because of the amount of time the

33

children spend with him. The Court notes that one of the three remaining minor children has not been in her father's home on a consistent basis since January of 2022 . . . The Court concludes that the appropriate worksheet to use would be Worksheet A [since] Mr. Bordelon does not have physical custody of the children 50% of the time.

This Court notes that the record shows a meticulousness on the part the trial court in its analysis and reasons in support of each of its rulings and judgments made in this case, which has been before it intermittently on issues of custody and support since the parties' divorce in 2010. We find no abuse of the trial court's vast discretion in this case, in declining either to utilize Worksheet B or to apply the joint custody adjustment/credit, not mandated, by La. R.S. 9:315.8(E). Clearly the trial court did not find either to be, *inter alia*, in the best interest of the children in this matter. This assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, the judgments of the trial court are hereby affirmed. Costs of this appeal are assessed to the plaintiff, Bart Timothy Bordelon.

**AFFIRMED**.

34